IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SUPERIOR PERFORMERS, INC. d/b/a <br> NATIONAL AGENTS ALLIANCE, <br> <br> Plaintiff, <br> <br> v. <br> <br> SHAWN L. MEAIKE, MARC J. MEADE, <br> BRYANT STONE, FRANK EUFEMIA, <br> JAIME EUFEMIA, and MICHAEL SIZER, <br> <br> Defendants. | 1:13CV1149 |

MEMORANDUM OPINION & ORDER

BEATY, District Judge.

This matter is before the Court on a Motion for Contempt and for Order to Show Cause for Criminal Contempt ("Motion for Contempt") [Doc. #79], a Supplement to Plaintiff's Motion for Contempt [Doc. #98] ("First Supplement"), a Second Supplement to Plaintiff's Motion for Contempt [Doc. #132], a Third Supplement to Plaintiff's Motion for Contempt [Doc. #155], and an "Amendment" to Plaintiff's Motion for Contempt [Doc. #174],[1] all filed by Plaintiff Superior Performers, Inc. ("Plaintiff" or "NAA"). Related filings before the Court are a Motion to Strike [Doc. #101] and a Response to Plaintiff's Multiple Supplements [Doc. #178] filed by Defendants Shawn L. Meaike, Marc J. Meade, Bryant Stone, Frank Eufemia, Jaime Eufemia, and Michael Sizer ("Defendants") and non-parties Paul McClain and Family

---

[1] Plaintiff more appropriately refers to this in its accompanying brief [Doc. #175] as a "motion to add" these individuals to the Motion for Contempt. The Court denied this "motion to add" these individuals at the Motion for Contempt hearing on July 23, 2014.

First Life, LLC. Defendants have also filed a Motion for Protective Order [Doc. #128]. These motions are ripe for review.[2]

For the reasons explained below, the Court will deny Plaintiff's Motion for Contempt, deny Defendants' Motion for Protective Order, and deny Defendants' Motion to Strike as moot.

I.     BACKGROUND

This case is one of several related cases brought by Plaintiff in an attempt to enforce restrictive covenants entered into by current and former NAA agents. This Court previously granted Plaintiff's Motion for Temporary Restraining Order [Doc. #36], and allowed the terms of that injunctive relief to remain in effect from the March 5, 2014 preliminary injunction hearing until April 11, 2014, when its Memorandum Opinion and Order [Doc. #88] granting in part Plaintiff's Motion for Preliminary Injunction [Doc. #13] was filed.

Plaintiff now brings a Motion for Contempt alleging violations of this Court's previously issued Orders by Defendant Meaike and non-parties Paul McClain and Family First Life ("FFL") (collectively "Contempt Respondents"). In this Motion, Plaintiff seeks a variety of extensive remedies from the Court, including an order of civil contempt, an order to show cause why Contempt Respondents should be held in criminal contempt (and referral of this matter to the U.S. Attorney's Office for investigation), an order requiring immediate disassociation from all

---

[2] Furthermore, Defendants' Motion to Dismiss [Doc. #31], Plaintiff's Motion to Amend the Complaint a Second Time [Doc. #62], and Plaintiff's Motion to Consolidate [Doc. #136], are also pending before this Court. The Court will address these Motions in a separate Order. In addition, Defendants have filed a Motion for Sanctions [Doc. #181], which is not yet ripe for review.

2

former NAA agents who resigned from NAA since the March 5 hearing, damages in excess of $1 million, and payment of Plaintiff's attorneys' fees and costs associated with this Motion for Contempt.[3] (Mot. for Contempt [Doc. #79], at 3-4.) Contempt Respondents opposed this Motion for Contempt and filed a Motion to Strike [Doc. #101] portions of the evidence submitted by Plaintiff in support of its Motion for Contempt, on the basis that parts of the evidence are inadmissible, and therefore, cannot be considered by the Court in evaluating a Motion for Contempt.

Plaintiff has since filed three Supplements, plus two days before the hearing, additional declarations, all in support of its Motion for Contempt. (Supplements [Docs. #98, #132, #155] and Declarations [Docs. #183, #184, #185].) In preparation for this hearing, the Court granted limited expedited discovery to both parties, based on the expedited discovery requested by Contempt Respondents as to the Wilson and Haggerty voicemail evidence introduced in Plaintiff's First Supplement [Doc. # 98]. This Court then held the hearing on Plaintiff's Motion for Contempt on July 23, 2014.

In a somewhat related matter, Defendants have filed a Motion for Protective Order [Doc. #128]. Because Plaintiff is allegedly pursuing discovery in state court, which Defendants contend was sought in order to circumvent this Court's discovery procedures, Defendants ask the Court to issue a protective order "instruct[ing] that, until discovery is permitted by this

---

[3] Although Plaintiff's Motion for Contempt requests this relief, Plaintiff's counsel did state at the July 23, 2014 hearing that these remedies requested in its Motion for Contempt are now premature, and instead, Plaintiff seeks additional expedited discovery in order to determine an adequate remedy.

3

Court, Plaintiff shall cease pursuing discovery in state court matters related to named defendants in this case or other cases Plaintiff has filed with this Court." (Mot. for Protective Order [Doc. #128], at 1.) The Motion for Protective Order also asks that this Court decline to allow any such materials to be used in this Court prior to discovery. (Id.) Plaintiff opposes this Motion. (Resp. to Mot. for Protective Order [Doc. #140].) The Court will address Plaintiff's Motion for Contempt, Defendants' Motion to Strike, and Defendants' Motion for Protective Order in turn.

II. PLAINTIFF'S MOTION FOR CONTEMPT

Plaintiff's Motion for Contempt includes a Motion for an Order to Show Cause, in which Plaintiff seeks to have Contempt Respondents appear before this Court to demonstrate why they should not be held in contempt. (Mot. for Contempt [Doc. #79], at 1.) "In dealing with a motion for an order to show cause, the first thing the Court must determine is whether the plaintiff seeks to hold the defendant in civil or criminal contempt." Ri Ra Holdings LLC v. Ri Ra, Madra Mor, Inc., No. 1:99cv374, 2002 WL 1009730, at *5 (M.D.N.C. May 16, 2002) (citing Major v. Orthopedic Equip. Co., 496 F. Supp. 604, 611 (E.D. Va. 1980)). A party's or a court's description of a contempt sanction as either civil or criminal is not determinative and will be independently scrutinized by the Court. Cromer v. Kraft Foods North Am., 390 F.3d 812, 821 (4th Cir. 2004) (citing Buffington v. Baltimore Cty, 913 F.2d 113, 133 (4th Cir. 1990)). Generally, if the purpose of the contempt proceeding is to coerce compliance with a court's mandate or to compensate the complainant for losses sustained, then the contempt sought is civil. Ri Ra Holdings, 2002 WL 1009730, at *5. However, if the purpose is to punish the

offending party for past disobedience, then the contempt sought is criminal. Id. The Supreme Court has explained that the "critical features" for determining whether a contempt remedy is civil or criminal are "the substance of the proceeding and the character of the relief that the proceeding will afford." Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 631, 108 S. Ct. 1423, 1426, 99 L. Ed. 2d 721 (1988). Thus, putatively civil contempt sanctions will be held to be criminal sanctions in cases where imposed sanctions are "not conditioned on compliance with a court order," or "not tailored to compensate the complaining party," but instead are "initiated to vindicate the authority of the court and to punish the actions of the alleged contemnor." Cromer, 390 F.3d at 822 (quoting Bradley v. Am. Household, Inc., 378 F.3d 373, 378 (4th Cir. 2004); Buffington, 913 F.2d at 133-35) (internal quotation marks omitted).

Here, the purpose of Plaintiff's Motion for Contempt appears to be aimed both at punishing Contempt Respondents for allegedly violating the terms of the Court's Order, as well as coercing Contempt Respondents' compliance with this Court's Order in the future. Plaintiff's request that the Court require Defendant Meaike to immediately disassociate with the recently resigned NAA agents and that the Court order Paul McClain to pay NAA "all commissions he has earned from sales made by Resigned Agents" are not conditioned on compliance with a court order or tailored to compensate Plaintiff. Rather, they are initiated to punish Contempt Respondents. However, the request for damages in the amount of "all payments generated by the Resigned Agents for Meaike and/or FFL" appears designed to compensate Plaintiff for alleged losses. Therefore, Plaintiff does properly classify the proceeding as one seeking both civil contempt and criminal contempt.

5

A.　Civil Contempt

In order for this Court to hold Contempt Respondents in civil contempt, Plaintiff must show each of the following elements by clear and convincing evidence: "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's 'favor'; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result." Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000) (quoting Colonial Williamsburg Found. v. The Kittinger Co., 792 F. Supp. 1397, 1405-06 (E.D. Va. 1992), aff'd, 38 F.3d 133, 136 (4th Cir. 1994)). If Plaintiff fails to make the necessary showing, Contempt Respondents cannot be held in contempt and there is no need to require Contempt Respondents to show cause why they should not be held in contempt. Ri Ra Holdings, 2002 WL 1009730, at *6.

However, "[i]f the moving party makes a prima facie showing of these elements, the burden shifts to alleged contemnor to justify his non-compliance." U.S. Commodity Futures Trading Comm'n v. Capitalstreet Fin., LLC, 3:09CV387-RJC-DCK, 2010 WL 2131852, at *2 (W.D.N.C. May 25, 2010) (citing United States v. Rylander, 460 U.S. 752, 757 (1983); Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 740 (11th Cir. 2006)). "Recognized defenses to civil contempt include: (1) a good-faith attempt to comply with the [C]ourt's order; (2) substantial compliance; and (3) an inability to comply." Id. (citing Consolidated Coal Co. v. United Mine Workers of Am., 683 F.2d 827, 832 (4th Cir. 1982)).

Contempt Respondents do not dispute that the first two elements are satisfied: the

individuals at issue had knowledge of a valid decree by this Court and that decree was in Plaintiff's favor. Rather, Contempt Respondents dispute that Plaintiff has shown by clear and convincing evidence that either of the last two elements are present: violation of the Court's Orders and that Plaintiff suffered harm as a result. Furthermore, Contempt Respondents contend that even if the Court finds that Plaintiff has shown by clear and convincing evidence that all four of the civil contempt elements are met, two recognized defenses save Contempt Respondents from contempt: their good-faith attempt to comply with the Order and their substantial compliance with the Order.

With regard to the first of the two disputed elements, whether there has been a violation of this Court's Orders, much evidence has been filed and reviewed by the Court, which this Court will briefly summarize. In general, the evidence presented by Plaintiff can be categorized into three categories:[4] (1) circumstantial evidence of individuals leaving NAA, some of whom joined FFL;[5] (2) circumstantial evidence of communications occurring between Contempt Respondents (and other FFL independent contractors) and individuals who were working for

---

[4] Contempt Respondents filed a Motion to Strike [Doc. #101] certain evidence submitted by Plaintiff, which Contempt Respondents contend is inadmissible as the evidence is based on inadmissible hearsay, speculative, not based upon the declarants' first-hand knowledge, and/or irrelevant. (Mot. to Strike [Doc. #101].) Specifically, Contempt Respondents move to strike the following three declarations: (1) the Declaration of Cleta Stegner [Doc. #85], the Declaration of Jason Carey [Doc. #86], and portions of the Third Affidavit of Marshall Pettigrew [Doc. #87]. However, because the Court can appropriately find grounds to unfavorably consider Plaintiff's Motion for Contempt even with this evidence, Contempt Respondents' Motion to Strike is denied as moot.

[5] This includes evidence of a larger than average resignation rate shortly after the preliminary injunction hearing, and evidence logging when individuals who at least at one point were NAA agents became active with FFL carrier, Royal Neighbors.

NAA at the time the communications were made;[6] and (3) alleged direct evidence of solicitation.[7]

First, evidence of larger than average numbers of resignations and evidence that a significant portion of those resigned agents now work for FFL is too speculative to constitute clear and convincing evidence of solicitation or encouragement to quit by Contempt Respondents. (See Order [Doc. #123], at 6.) As the Court has previously explained, and as Plaintiff has acknowledged, it is not a violation of this Court's Orders for Contempt Respondents or any individuals to communicate with current NAA agents, or even to discuss the status of this case with them, as long as they are not soliciting them to work for FFL or encouraging them to quit. Therefore, under the clear and convincing evidentiary standard governing a motion for civil contempt, evidence that contact by way of phone or "text" took place between Contempt Respondents and current NAA agents, or between any other FFL agent and current NAA agent, is not enough for this Court to conclude that Respondents should be held in civil contempt. Similarly, evidence that a much larger than average percentage of NAA agents resigned shortly after the preliminary injunction hearing is also insufficient to rely on in this proceeding.

Furthermore, the circumstantial and direct evidence that non-party individuals, other than the Contempt Respondents, may have violated the Court's Orders is not relevant to this

---

[6] This includes evidence gleaned from phone records and depositions in parallel state court proceedings.

[7] This includes the Wilson voicemail, evidence of the Haggerty "robocall," and limited email and text messages obtained in parallel state court proceedings.

proceeding against Contempt Respondents. Although theoretically an individual who is not a Contempt Respondent could have been acting at the direction of FFL or another Contempt Respondent, Plaintiff offers almost no evidence as to why such actions should be imputed to any Contempt Respondents.[8]

Plaintiff also points to evidence that some individuals have deleted texts and perhaps even altered documents that were discovered in the state court discovery process. Contempt Respondents did not have adequate notice to respond to the allegations that were raised for the first time in the declarations filed by Plaintiff on July 21, 2014, but even if they had adequate time and did not respond to the substance of these allegations, the Court still would likely not place much weight on such evidence in this proceeding. Although Plaintiff contends that perhaps this Court should draw an adverse inference from the alleged spoliation of some of this

---

[8] Plaintiff does point to evidence of an email signature line of Sean Ruggiero (the Court presumes this is the same individual who is a Defendant in Case No. 14cv232, although his last name is spelled "Ruggerio" in that Complaint), describing himself as "managing agent" with an office address matching that of Defendant Meaike. But without more, how this individual describes himself in an email signature line is not enough to refute Contempt Respondents' contention that he is merely an independent contractor for FFL without any express or implied authority to act on behalf of FFL. Indeed, Plaintiff has not presented any evidence or authority to suggest that Sam Ruggiero has any such authority to act on behalf of FFL or any of the other Contempt Respondents.

To the extent that Plaintiff has taken the position in prior filings with this Court that its own agents-that is, independent contractors who sell insurance on behalf of insurance carriers and NAA-are not able to act on behalf of, or bind Plaintiff, the Court will not impose a different understanding of the independent contractor relationship on FFL without evidence suggesting that a different understanding is warranted. (See Pl.'s Request for Clarification [Doc. #126], at 2 (explaining Plaintiff's position as to why it lacks the legal authority to require its independent contractors to search for or produce telephone records).)

evidence in the state court discovery process, Plaintiff has not convinced the Court that it may draw adverse inferences based on alleged discovery abuses that occurred in a different court's discovery proceedings. If such alleged discovery abuses occur in the discovery process in this Court, that would, of course, present a different situation that the Court would feel compelled to address.

Furthermore, Plaintiff does not appear to allege that any of purported discovery abuses were committed by the Contempt Respondents. Therefore, these alleged discovery abuses are not relevant to the contempt proceedings against the Contempt Respondents. To the extent that Plaintiff contends that they warrant further expedited discovery as requested at the contempt hearing, Plaintiff has not shown good cause as to why the Court should allow it to further circumvent the standard discovery process. (See Fed. R. Civ. P. 26(d)(1).) Therefore, Plaintiff's request at the hearing for additional expedited discovery for the stated purpose is denied.

Finally, given the attention this evidence has been given in the contempt proceedings, the Court will briefly discuss the alleged Wilson voicemail and Haggerty robocall.[9] Plaintiff's First Supplement to its Motion for Contempt [Doc. #98] was based on receipt of an alleged solicitation voicemail by NAA agent, George Wilson, and a similar call allegedly received by Todd Haggerty, both of whose cellular telephones purportedly indicated that the calls came from

---

[9] The Court acknowledges that Defendants have filed a Motion for Sanctions [Doc. #181] with regard to this evidence. However, that Motion is not yet ripe for review, so the Court will not address the merits of that Motion at this time.

the main telephone number for FFL.  Contempt Respondents vigorously dispute the reliability and veracity of this evidence, and this Court granted both parties limited discovery on this issue.  (Orders [Docs. #131, #142, #158, #173].)

The parties agree that the voice on the voicemail recording has been altered and that the telephone records produced through expedited discovery show that there was not a phone call made from FFL's main phone line to either the Wilson or Haggerty phone numbers that allegedly received these calls.  Both parties have retained experts on the matter, each tending to implicate a different person as the caller on the recording.  Beyond the concerning implication that this evidence may have been fabricated by Plaintiff, Contempt Respondents' forensic examiner expert contends that any information regarding the Wilson voicemail has been erased from the phone, which Plaintiff does not dispute.  Indeed, Contempt Respondents' expert contends that this erasure appears by use of a factory reset, as well as use of an application called "Clean Master," designed to "remove personal and sensitive information."  (Ex. A - Resp. to Pl.'s Multiple Supplements [Doc. #178], at 2-3.)  Furthermore, it is noteworthy to the Court that this alleged deletion occurred on May 22, 2014—that is, after both Plaintiff's counsel and Mr. Wilson himself confirmed that he was preserving the voicemail on his phone on May 9, 2014.  (See Pl.'s Resp. to Defs.' Emergency Mot. for Exp. Disc. [Doc. #118], at 5-6; Second Decl. of George Wilson [Doc. #119] ¶ 7.)  Although Plaintiff's counsel contends that this was an unfortunate accident, it certainly does not help the Court reach the conclusion that that Plaintiff advocates for: that Mr. Jimino (who may be associated with Defendant Meaike) was the actual caller.

11

Similarly, it appears that neither Plaintiff nor Mr. Haggerty took any steps to preserve any evidence of the phone call made to him. Indeed, Mr. Haggerty admitted during his deposition that he does not know if the phone number set forth in his declaration is in fact the number that was displayed on his phone, as the information relating to the phone number or caller ID for the alleged robocall is now "gone." (Ex. A - Mot. for Sanctions [Doc. #182-1], at 50). In conclusion, the Wilson voicemail and Haggerty robocall evidence is at a minimum, inconclusive, and certainly not clear and convincing.

After reviewing the evidence presented by both parties, the Court concludes that Plaintiff has failed to show by clear and convincing evidence that the Contempt Respondents have violated an order issued by this Court. As that is a required element for civil contempt, Plaintiff's Motion [Doc. #79] to hold Contempt Respondents in civil contempt is denied, and the request for expedited discovery requested by Plaintiff at the hearing is denied. As previously noted, because this Court can deny Plaintiff's Motion for Contempt without considering the merits of Contempt Respondents' Motion to Strike [Doc. #101], the Contempt Respondents' Motion to Strike is denied as moot.

B.   Criminal Contempt

18 U.S.C. § 401 gives the Court, at its discretion, "power to punish by fine or imprisonment, or both," for conduct, including "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401 (2012). "To support a conviction of criminal contempt for violation of a court order, it must be proved beyond a reasonable doubt, that a person willfully, contumaciously, intentionally, with a wrongful state of mind,

violated a decree which was definite, clear, specific, and left no doubt or uncertainty in the minds of those to whom it was addressed." United States v. McMahon, 104 F.3d 638, 642 (4th Cir. 1997) (quoting Richmond Black Police Officers Ass'n v. City of Richmond, 548 F.2d 123, 129 (4th Cir. 1977)) (internal quotation marks omitted).

"[T]he contempt power's sole function is to punish an 'act derogatory to the power and authority of the [C]ourt.'" Brandt v. Gooding, 636 F.3d 124, 135 (4th Cir. 2011) (quoting Interstate Commerce Comm'n v. Brimson, 155 U.S. 3, 5, 15 S. Ct. 19, 39 L. Ed. 49 (1894)). Criminal contempt proceedings are initiated at the sole discretion of the court and are "'not dependent on the [success] or even the continuation of the' underlying suit." Id. (quoting Bray v. United States, 423 U.S. 73, 76, 96 S. Ct. 307, 46 L. Ed. 2d 215 (1975)). "Indeed, the very 'purpose of a criminal court is not to provide a forum for the ascertainment of private rights' but 'to vindicate the public interest in the enforcement of the criminal law.'" Id. (quoting Standefer v. United States, 447 U.S. 10, 25, 100 S. Ct. 1999, 64 L. Ed. 2d 689 (1980)).

As criminal contempt proceedings would require a violation of this Court's Orders, criminal contempt proceedings are unwarranted in view of what has, or more specifically, what has not been presented to the Court. For these reasons, this Court has already concluded that Plaintiff has not shown by clear and convincing evidence that Contempt Respondents violated an Order issued by this Court. Therefore, the Court will not refer this matter to the U.S. Attorney's Office, as Plaintiff requested. As such, the Court denies Plaintiff's Motion for Contempt [Doc. #79] in its entirety, including Plaintiff's request to initiate criminal contempt proceedings against the Contempt Respondents.

## III. DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Defendants' Motion for Protective Order [Doc. #128] requests that the Court issue a protective order "instruct[ing] that, until discovery is permitted by this Court, Plaintiff shall cease pursuing discovery in state court matters related to named defendants in this case or other cases Plaintiff has filed with this Court," and that this Court decline to allow any such materials to be used in this Court prior to discovery. (Mot. for Protective Order [Doc. #128], at 1.) Plaintiff opposes this request, contending that Defendants' Motion fails because it does not satisfy the standards of a protective order under Federal Rule of Civil Procedure 26, and because well-settled principles of federalism and comity foreclose this Court form enjoining pending state court actions in the manner sought by Defendants. (Resp. to Mot. for Protective Order [Doc. #140].)

Pursuant to Rule 26(c), a protective order can be issued only with "good cause" "in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). First, Defendants do not offer authority to this Court to support the contention that, under Rule 26(c), this Court has the authority to dictate how discovery should proceed in state court, as that is not the court where this action is pending. Second, although this Court does have authority over how to conduct the discovery proceedings in this Court, Defendants would still need to show good cause for this Court to deny Plaintiff the use of lawfully obtained evidence in proceedings in this Court. See Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 412 (M.D.N.C. 1991) ("The burden of showing good cause rests with the party requesting the protective order.") In this regard, Defendants must "make a particular request and a specific demonstration of facts in support of the request

14

as opposed to conclusory or speculative statements about the need for a protective order and the harm which would be suffered without one." Id. (citing Gulf Oil v. Bernard, 452 U.S. 89, 102 n.16, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981); Deines v. Vermeer Mfg. Co., 133 F.R.D. 46, 48 (D. Kan. 1990)). Defendants have not made such a specific demonstration of facts about the harm that would be suffered without a protective order. As such, Defendants have not shown good cause as to why, if Plaintiff lawfully obtains admissible evidence, it should not be allowed to use that evidence in this Court, even if it did not procure such evidence through this Court's discovery process. Therefore, Defendants' Motion for Protective Order [Doc. #128] is denied.

IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Contempt [Doc. #79] is DENIED, Defendants' Motion for Protective Order [Doc. #128] is DENIED, and Defendants' Motion to Strike [Doc. #101] is DENIED AS MOOT. The Preliminary Injunction [Doc. # 88] remains in effect.

This the 29th day of July, 2014.

United States District Judge