IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SUPERIOR PERFORMERS, INC. d/b/a NATIONAL AGENTS ALLIANCE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:13CV1149 |
| SHAWN MEAIKE, MARC J. MEADE, BRYANT STONE, FRANK EUFEMIA, JAIME EUFEMIA, and MICHAEL SIZER, | ) ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is currently before the Court on the Motion to Amend [Doc. #62] filed by Plaintiff Superior Performers, Inc. ("Plaintiff" or "NAA"). Defendants have filed a Response in Opposition to the Motion to Amend [Doc. #77], to which, Plaintiff has filed a Reply [Doc. #93]. Also before the Court is the Motion to Dismiss [Doc. #31], filed by all Defendants in this case. Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss [Doc. #71], to which Defendant filed a Reply [Doc. #78]. For the reasons discussed below, the Court grants in part and denies in part Plaintiff's Motion to Amend and as a result, the Court denies Defendants' Motion to Dismiss without prejudice to Defendants refiling such a motion based upon Plaintiff's Second Amended Complaint if it is warranted in light of the findings below.

I.    BACKGROUND

This case is one of several related cases brought by Plaintiff in an attempt to, among

other things, enforce restrictive covenants entered into by current and former NAA agents and managers.[1]  As to the First Amended Complaint in this action, Plaintiff alleged five separate Causes of Action.  These Causes of Action included those for breach of contract based on alleged violations of the non-solicitation and non-competition agreements, a claim for tortious interference with contract and business relationships, a claim for unfair and deceptive trade practices, a civil conspiracy claim, and a wiretapping claim.

Plaintiff now brings a formal Motion to Amend its Complaint.  If allowed, this Complaint would be Plaintiff's Second Amended Complaint, as Plaintiff previously amended its complaint once as a matter of course.  (See Amended Compl. [Doc. #11].)  In support of its Motion to Amend, Plaintiff asserts that it has now learned of multiple instances of solicitation that is allegedly prohibited pursuant to the parties' agreements.  As a result, Plaintiff seeks to include such allegations in its Second Amended Complaint.  Plaintiff attached its proposed Second Amended Complaint to its Motion to Amend.  After reviewing the Second Amended Complaint, it appears that it contains other changes besides merely adding additional allegations of solicitation.  For instance, the Causes of Action increase from five separate Causes of Action to a total of 13 separate Causes of Action.  The Plaintiff's First Amended Complaint contained one Cause of Action for breach of contract based on Defendants' alleged violations of the non-competition and non-solicitation agreements.  The Second Amended Complaint, however, has a total of seven separate breach of contract Causes of Action.  These Causes of Action more

_____

[1]Currently, a preliminary injunction exists in this action, which restrains Defendants from violating the non-solicitation provisions of their agreements with NAA.

explicitly explain what provision of the parties' various agreements that the Defendants allegedly has breached. The proposed Second Amended Complaint, however, no longer make claims concerning the non-competition provisions. Cause of Action Seven, one of Plaintiff's breach of contract Causes of Action in the proposed Second Amended Complaint, however, includes new allegations against certain Defendants' who allegedly breached their contracts by failing to pay debts owed to NAA. Such claim was not alleged in the First Amended Complaint. All other Causes of Action for breach of contract in the proposed Second Amended Complaint focus on Defendants' alleged breach of the non-solicitation provisions in either the parties' agent agreements or management agreements. Furthermore, Plaintiff has alleged a new Cause of Action in the proposed Second Amended Complaint for common law unfair competition and business conversion. Accordingly, it is clear that Plaintiff's Second Amended Complaint contains more than additional instances of solicitation alone.

Prior to Plaintiff filing its Motion to Amend, Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint. In the Motion to Dismiss, Defendants first assert that Plaintiff failed to adequately plead its claims against Defendants. Specifically, Defendants assert that all of the claims are devoid of supportive facts, and thus, must be dismissed. Second, Defendants assert that Plaintiff's tort claims must be dismissed because they are not identifiable nor distinct from Plaintiff's breach of contract claims. The Court, however, will first address Plaintiff's Motion to Amend to assert a Second Amended Complaint, as any amendment may moot Defendants' Motion to Dismiss the First Amended Complaint.

II.   DISCUSSION

A.   Motion to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading with the court's leave and "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).  While the decision to grant a party leave to amend a pleading is within the sound discretion of the trial court, that discretion is limited by the general policy favoring the resolution of cases on the merits.  Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 279 (4th Cir. 1987).  In exercising its discretion in resolving the question of whether to allow leave to amend, a court "should focus 'on prejudice or futility or bad faith as the only legitimate concerns in denying leave to amend, since only these truly relate to protection of the judicial system or other litigants.' "  Id. (quoting Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)).  In the Fourth Circuit, "absence of prejudice, though not alone determinative, will normally warrant granting leave to amend."  Davis, 615 F .2d at 613.  Furthermore, as to futility, leave to amend should only be denied based on futility "when the proposed amendment is clearly insufficient or frivolous on its face."  Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986).  Such "[f]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards."  Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

Defendants argue that Plaintiff's Motion to Amend is futile as to the claims arising from the agreements and the wiretapping claim.  As to the claims arising from the agreements, Defendants assert that the proposed Second Amended Complaint does not cure the deficiencies

addressed in Defendants' Motion to Dismiss the First Amended Complaint. Further, as to the

wiretapping claim, Defendants argue that any such amendment is futile because Plaintiff lacks

standing to bring such claim and even if standing exists, the wiretapping claim is not adequately

plead. Accordingly, the Court will address each claim[2] of the proposed Second Amended

Complaint in turn to determine whether Plaintiff's Motion to Amend is in fact futile.

1.      Breach of Contract Claims

Plaintiff asserts seven separate Causes of Action in the proposed Second Amended

Complaint for breach of contract based on the parties' agreements. Six of these Causes of

Action are based on the Defendants' alleged breach of the restrictive covenants in either their

agent agreements or management agreements.[3] The agent agreements' restrictive covenant reads

as follows:

> Non-Solicitation of Employees and Independent Contractors. During the
> Restriction Period, the Independent Contractor shall not, directly or indirectly:
> (a) solicit for the provision of services or employment any employee or
> independent contractor of NAA or its Affiliates, (b) advise or recommend to any

---

[2] Defendant does not specifically address the Seventh Cause of Action based on an alleged breach of the parties' agreements concerning unpaid debts of certain defendants in either their response to the Motion to Amend or in their earlier Motion to Dismiss, which they appear to have incorporated into their response to the Motion to Amend. As a result, the Court finds that Plaintiff's Motion to Amend is unopposed to the extent Plaintiff has moved to add the Seventh Cause of Action.

[3] The Seventh Cause of Action is specifically based on an alleged breach of a different paragraph in the agreements requiring NAA agents to pay NAA for leads generated by the company. Plaintiff argues that certain Defendants failed to pay NAA for such leads, and as such, breached their agreements by not paying their debts. As stated above, Defendants do not make any specific arguments concerning the Seventh Cause of Action in their Response to the Motion to Amend. Further, the Defendants' previously filed Motion to Dismiss, which is referenced in Defendants' Response to the Motion to Amend, does not address this claim because such claim was not present in Plaintiff's First Amended Complaint.

other person that they employ or solicit for provision of services any employee or independent contractor of NAA or its Affiliates, or (c) encourage or advise such employees or independent contractors to sever, discontinue or not renew any agreement or relationship to NAA or its Affiliates, or (d) otherwise establish or seek to establish any business relationship with any such employee or independent contractor relating to the sale of Life Insurance Products.

(Agent Agreement [Doc. #15-1], ¶ 15 at 10.)  The almost identical restrictive covenant in the management agreements reads as follows:

> Non-Solicitation of Employees and Independent Contractors. During the period of time Independent Contractor provides services to or for the Company and for a period of two (2) years following the termination of Independent Contractor's provision of services to the Company, the Independent Contractor shall not, directly or indirectly, solicit for provision of services, advise or recommend to any other person that they employ or solicit for provision of services, or otherwise establish or seek to establish any business relationship relating to the sale of insurance products with, any employee of the Company or of its affiliates or any other independent contractor or of its affiliates, or encourage or advise such employees or independent contractors to sever, discount or not renew any agreement or relationship to the Company.

(Mgmt. Agreement [Doc. #15-2], ¶ 8 at 5.)

Defendants argue that such new claims being asserted based on these paragraphs are futile because Plaintiff's allegations as to the claims are conclusory, non-specific, and they fail to cure the deficiencies raised in Defendants' Motion to Dismiss the First Amended Complaint. Furthermore, Defendants argue that such claims in the proposed Second Amended Complaint fail for a lack of consideration. The Court finds, however, that the Plaintiff adequately plead its Causes of Action for breach of contract, and the Court also finds that, at this stage of the litigation, the consideration alleged by Plaintiff is sufficient to maintain Plaintiff's Causes of Action for breach of contract as noted in its proposed Second Amended Complaint.

The elements for a breach of contract claim under North Carolina law are "(1) [the]

existence of a valid contract and (2) breach of the terms of that contract." <u>Samost v. Duke Univ.</u>, 742 S.E.2d 257, 260 (N.C. Ct. App. 2013) (quoting <u>Poor v. Hill</u>, 530 S.E.2d 838, 843 (N.C. 2000)).  The North Carolina Supreme Court has stated that a restrictive covenant between an employer and an employee is only valid and enforceable under North Carolina law if it is: "(1) in writing; (2) reasonable as to terms, time, and territory (3) made part of the employment contract; (4) based on valuable consideration; and (5) not against public policy." <u>Triangle Leasing Co., Inc. v. McMahon</u>, 393 S.E.2d 854, 857 (N.C. 1990) (citing <u>Whittaker Gen. Med. Corp. v. Daniel</u>, 379 S.E.2d 824 (N.C. 1989); <u>Kuykendall</u>, 370 S.E.2d at 380; <u>Greene Co. v. Kelley</u>, 134 S.E.2d 166 (N.C. 1964)).

The Defendants contest the validity of the restrictive covenant based on a lack of valuable consideration.  The Court, however, addressed this specific issue in its Memorandum Opinion and Order granting Plaintiff's Motion for a Preliminary Injunction for enforcement of the non-solicitation covenant.  (Prelim. Injunc. Mem. Op. and Ord. [Doc. #88], 13-17.)  The Court found that because it did not have sufficient proof that Defendant signed the same contracts provided by Plaintiff when the Defendants began their employment relationship with Plaintiff, the Court would assume that new or separate consideration was required for the separate agreements that Plaintiff did present to the Court.  Even so, however, the Court found that by Plaintiff promising to provide access to NAA products, including leads through these agreements, such access likely provided the consideration necessary for the later signed agreements.  Notwithstanding this finding, the Court did recognize that discovery may ultimately demonstrate that access to the NAA products through the lead program does not

operate as new or separate consideration. However, any consideration of evidence developed through discovery is better left to the summary judgment stage of litigation, and is not appropriately addressed in determining futility for purposes of considering Plaintiff's Motion to Amend.

Defendants also argue that the consideration element of validity is not properly plead because the Second Amended Complaint does not contain any allegation that Plaintiff provided additional consideration for the later signed agreements. Therefore, Defendants assert that any amendment would be futile based on Plaintiff's failure to adequately plead the consideration element of its breach of contract Causes of Action. The Court, however, finds that Plaintiff's amendment is not futile based on a failure to plead the consideration element. In Plaintiff's Second Amended Complaint, Plaintiff asserts that the restrictive covenants are valid and enforceable. While such assertions do seem conclusory, Plaintiff also references the parties' agreements and indicates that such agreements will be attached to the Second Amended Complaint.[4] In determining whether a plaintiff has stated a claim for relief, a court may "also consider 'documents incorporated into the complaint by reference.' " United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)). The referenced agreements include NAA's written promise to supply leads to

---

[4]Plaintiff, in its Reply [Doc. #93] to the Motion to Amend, does indicate that it did not attach the referenced agreements with its proposed Second Amended Complaint, but notes that Defendants were previously provided with copies of the agreements. Further, Plaintiff attached the referenced agreements to its Reply.

Defendants. (Agent Agreement, [Doc. #93-1], at 3.) Therefore, the documents referenced in the proposed Second Amended Complaint provide sufficient facts to state a claim for relief, and thus, Plaintiff's proposed Second Amended Complaint is not futile based on a failure to adequately plead the element of consideration.

Defendants next argue that Plaintiff's proposed Second Amended Complaint is futile because it fails to adequately plead the wrongful conduct associated with Defendants' alleged breach of the non-solicitation covenant. The Court finds however, that after reviewing Plaintiff's proposed Second Amended Complaint, it does adequately plead such alleged wrongful conduct. As stated above, the two elements of a cause of action for breach of contract are: "(1) [the] existence of a valid contract and (2) breach of the terms of that contract." Samost, 742 S.E.2d at 260 (quoting Poor, 530 S.E.2d at 843). Where a complaint contains well-pleaded factual matter, the Court should draw reasonable inferences from those facts, taken as true, which would suggest the existence of the misconduct alleged in a complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Accordingly, the Court need only find that based on the factual matter that is plead by Plaintiff, such facts suggest the existence of a breach of the Defendants' non-solicitation covenants.

Plaintiff's Causes of Action within the proposed Second Amended Complaint based on alleged breaches of the non-solicitation covenants, assert claims against Defendants' for solicitation of NAA Agents to discontinue their relationship with NAA and Defendants' alleged solicitation of NAA Agents to establish business relationships with Defendants. Further, Plaintiff has also alleged a breach of the non-solicitation covenant based upon Defendants'

alleged successful solicitation of NAA Agents with whom Defendants then established business relationships. As to these Causes of Action relating to the breaches of the non-solicitation agreements, Plaintiff asserts in its proposed Second Amended Complaint that Defendants have continually, directly or indirectly, contacted NAA Agents in an effort to entice such Agents to leave NAA and join Defendant Shawn Meaike's newly formed company, Family First Life, LLC ("FFL"), where the remaining Defendants allegedly work. Plaintiff gives a specific list of those former NAA Agents who Plaintiff knows to have been unsuccessfully recruited. (Prop. Sec. Amend. Compl. [Doc. #62-1], at 5.) While this list does not refer directly to the individual Defendants, Plaintiff also provided a list of approximately 280 NAA Agents who Plaintiff believes to have been encouraged or solicited directly or indirectly by Defendants to discontinue their relationship with NAA and establish a business relationship with Defendants through FFL. (Id., at 5-6.) Taking these facts as true, the Court finds that such facts suggest that Defendants did breach their non-solicitation covenants. While Plaintiff does not provide the name of a specific NAA Agent directly solicited by each Defendant, such specific facts are not required, as a heightened pleading requirement like that required for fraud claims, does not apply to breach of contract claims. See Fed. R. Civ. P. 9(b) (requiring that plaintiffs state claims for fraud or mistake with particularity). The Court can infer at this stage of the litigation that the complained of solicitation occurred from the fact that at least 280 past NAA Agents are now in a business relationship with a company that was started by Defendant Meaike and which company employs the remaining Defendants. Accordingly, the Court finds that the proposed Second Amended Complaint is not futile because Plaintiff, at the very least, adequately plead

the wrongful conduct. The Court notes, however, that while this statement of facts is sufficient at this time to state a plausible claim for relief, such a finding does not mean that Plaintiff can sustain its Causes of Action within the Second Amended Complaint in the future without proof of actual solicitation by the above-named Defendants.

2. Tortious Interference Claims

Plaintiff also asserts two separate tortious interference claims within its proposed Second Amended Complaint. Specifically, Plaintiff asserts a Cause of Action for tortious interference with contract and business relationships, and a Cause of Action for tortious interference with prospective business relationships. Plaintiff's Cause of Action for tortious interference with contract and business relationships alleges that Defendants interfered with Plaintiff's relationships with its Agents, and such conduct was wrongful and not motivated by a legitimate business purpose. Whereas, on the other hand, Plaintiff's Cause of Action for tortious interference with prospective business relationships alleges that Defendants, by recruiting NAA Agents that would have continued to sell insurance to customers through NAA, ultimately interfered with Plaintiff's business with those potential future customers. Defendants argue that such claims are not adequately plead, and further, that such claims cannot proceed based on the economic loss doctrine as they are not identifiable nor distinct from Plaintiff's Causes of Action for breach of contract in the proposed Second Amended Complaint.

To state a claim for tortious interference with contract, a plaintiff must show that (1) a valid contract existed between the plaintiff and a third party which confers a contractual right against that third party, (2) the defendant knew of such contract, (3) the defendant intentionally

11

induced the third party not to perform pursuant to the contract, (4) in doing so the defendant acted without justification, and (5) the defendant's actions resulted in actual damage to the plaintiff. <u>Embree Constr. Group, Inc. v. Rafcor, Inc.</u>, 411 S.E.2d 916, 924 (N.C. 1992) (citing <u>United Lab., Inc. v. Kuykendall</u>, 370 S.E.2d 375, 387 (N.C. 1988)). Whereas, the first element of a tortious interference with prospective business relationships requires a showing of a *specific* potential contract between a plaintiff and a third party. <u>Dalton v. Camp</u>, 548 S.E. 2d 704, 709 (N.C. 2001).

Initially, the Court finds that at least as to Plaintiff's Cause of Action for tortious interference with prospective business relationships, any such claim is inadequately plead. Therefore, any amendment based upon this interference claim would be futile. For instance, Plaintiff only conclusively states that the NAA Agents recruited by Defendants would have continued to sell life insurance through NAA and as a result of their recruitment by Defendants, NAA lost those future customers. Plaintiff, however, fails to allege which potential customers or contracts it specifically lost, as is required to state a claim for tortious interference with prospective business relationships. Furthermore, Plaintiff's assertions that it lost future customers generally are too speculative to state a plausible claim for relief. <u>See</u> <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 545, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."); <u>see</u> <u>also</u> <u>Government Employees Ins. Co. v. Google, Inc.</u>, 330 F. Supp. 2d 700, 705-06 (E.D. Va. 2004) (Finding that a general allegation of expectancy that consumers will purchase a certain product, without something more concrete

was not sufficient to state a claim for tortious interference with a business expectancy when Virginia law required plaintiff to show that a *specific* business expectancy was interfered with).

Even if Plaintiff's claim for tortious interference with prospective business relationships was adequately plead, the Court should find that both tortious interference claims would fail based on the economic loss doctrine. The economic loss doctrine "prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law." Lord v. Customized Consulting Specialty, Inc., 643 S.E. 2d 28, 30 (N.C. Ct. App. 2007). Therefore, "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 240 S.E.2d 345, 350 (1978). Rather, tort claims are limited to those that are identifiable and distinct from the primary breach of contract claim. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998).

In this action, both of Plaintiff's tortious interference claims arise out of the same conduct complained of in Plaintiff's breach of contract Causes of Action. As to both tortious interference claims, Plaintiff ultimately complains of Defendants' alleged interference with Plaintiff's contractual relationship with its Agents. Thus, the interference at issue in both claims is Defendants' alleged solicitation of such agents to work for Defendant Meaike's company, FFL. Such conduct is exactly the same as that complained of in Plaintiff's Cause of Action for breach of the non-solicitation covenant based on Defendants alleged successful solicitation of NAA Agents within Plaintiff's proposed Second Amended Complaint. In the breach of contract Cause of Action based on Defendants alleged successful solicitation of NAA Agents, Plaintiff alleges that Defendants wrongfully solicited other NAA Agents to leave their

13

employment with Plaintiff and that Defendants then established business relationships with such Agents. See Akzo Nobel Coatings Inc. v. Rogers, No. 11 CVS 3013, 2011 WL 5316772, at *20-21 (N.C. Super. Nov.3, 2011) (finding that a complaint lacked tort allegations sufficient to establish tortious interference claims that could be considered distinct from the primary breach of the restrictive covenants). Accordingly, based on the economic loss doctrine's prohibition against claims that are not identifiable and distinct from the primary breach of contract claims, the Court denies the amendment of both of Plaintiff's tortious interference claims as futile.

### 3. Unfair and Deceptive Trade Practices

Plaintiff again asserts its claim for Unfair and Deceptive Trade Practices in its proposed Second Amended Complaint. Plaintiff states that Defendants have intentionally interfered with NAA's contractual and business relationships with its Agents and wrongfully established business relationships relating to the sale of life insurance products with its Agents. Plaintiff alleges that this conduct was willful, was intended to inflict harm to NAA, and was intended to provide Defendants an unfair competitive advantage. Plaintiff asserts that this conduct constitutes unfair and deceptive trade practices pursuant to common law and applicable North Carolina statutory law. Defendants argue that because Plaintiff only asserted generic allegations of unfair and deceptive practices, Plaintiff failed to sufficiently plead the Cause of Action. Furthermore, Defendants assert that this claim cannot be brought because, like the Plaintiff's claims for tortious interference discussed above, Plaintiff's unfair and deceptive trade practices claim is not identifiable nor distinct from the breach of contract claims. Accordingly,

Defendants argue that allowing any amendment to such Cause of Action would be futile.

Initially, the Court notes that it is unaware of a common law cause of action specifically referred to as common law unfair and deceptive trade practices. The statutory remedy presently in place for unfair and deceptive trade practices was developed to supplement other common law remedies that "often prove ineffective to redress unfair or deceptive practices." Edwards v. West, 495 S.E. 2d 920, 925 (N.C. Ct. App. 1998) (citing Marshall v. Miller, 276 S.E. 2d 397, 400 (N.C. 1981)). Such common law remedies, which the statute was designed to supplement, are those for fraud, misrepresentation, and implied or express warranties. Marshall, 276 S.E. 2d at 400. Accordingly, while the actions giving rise to a claim for unfair and deceptive practices may also give rise to other common law claims like that for fraud, it does not appear that a common law claim for unfair and deceptive practices exists. Therefore, any attempt to assert a common law claim for unfair and deceptive trade practices would be futile.

A claim for unfair and deceptive trade practices, however, is cognizable pursuant to North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen.Stat. § 75-1.1 et seq. This statute prohibits the use of unfair and deceptive trade practices in commerce and authorizes a private cause of action for a plaintiff who can demonstrate (1) an unfair or deceptive act or practice or unfair method of competition, (2) in or affecting commerce, which (3) proximately caused actual injury to the plaintiff. Spartan Leasing Inc. v. Pollard, 400 S.E.2d 476, 482 (N.C. Ct. App. 1991). A "mere breach of contract, even if intentional," however, is not sufficient to sustain a claim under the UDTPA. Broussard, 155 F.3d at 347. Instead, a showing of "substantial aggravating circumstances" is required to sustain a UDTPA claim. Id. North

Carolina courts " 'differentiate between contract and deceptive trade practice claims, and relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law.' " Id. (quoting <u>Hageman v. Twin City Chrysler–Plymouth Inc.</u>, 681 F. Supp. 303, 306-07 (M.D.N.C. 1988)).

Similar facts were discussed in <u>ACS Partners, LLC v. Americon Group, Inc.</u>, No. 3:09cv464–RJC–DSC, 2010 WL 883663 (W.D.N.C. March 5, 2010), where the plaintiff alleged that the defendant committed an unfair and deceptive trade practice by soliciting the plaintiff's current and prospective clients and used the plaintiff's pricing scheme. The district court, however, found that the alleged misuse of the pricing scheme and solicitation of the clients, however, directly related to the defendant's alleged breach of the non-competition and confidential disclosure agreements. <u>ACS Partners, LLC</u>, 2010 WL 883663, at *9. Accordingly, because such agreements specifically addressed these alleged wrongful acts and no other substantial aggravating circumstances were alleged, the district court dismissed the plaintiff's claim pursuant to the UDTPA. Id.

Plaintiff's UDTPA Cause of Action within the proposed Second Amended Complaint also bases its claim on Defendants' alleged intentional interference with the contracts Plaintiff had with its Agents and on Defendants' alleged wrongful establishment of business relationships with such Agents. Ultimately, like the plaintiff's claims in <u>ACS Partners</u>, these allegations are not distinct from Plaintiff's allegations relating to the breach of contract Causes of Action within the proposed Second Amended Complaint, which arise from Defendants' alleged violation of the non-solicitation covenants. Instead, such claims are based on the "existence of an

agreement, the terms contained in the agreement, and the interpretation of an agreement."
Broussard, 155 F.3d at 347. Furthermore, Plaintiff failed to allege any substantial aggravating circumstances apart from the mere breaches of the covenants, that would allow the claim that ultimately arises from a breach of contract, to proceed under the UDTPA. Accordingly, to allow Plaintiff's UDTPA claim to proceed would be futile, and thus, the Court finds that Plaintiff's Motion to Amend such a claim will be denied.

4.    Common Law Unfair Competition and Business Conversion

Plaintiff, for the first time in its proposed Second Amended Complaint, asserts a Cause of Action for common law unfair competition and business conversion. Plaintiff alleges that Defendants' recruitment of its Agents in breach of the Agent's agreements, demonstrates that Defendants converted NAA's business without its consent, and that such conversion was unfair. This claim was not specifically addressed in Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, which Defendants incorporated into its response to Plaintiff's Motion to Amend, because such claim did not yet exist. Defendant, however, did broadly assert that Plaintiff's tort claims generally should be dismissed due to the claims not being identifiable and distinct from the claims for breach of contract. Accordingly, the Court will address the futility of this Cause of Action for unfair competition and business conversion as it did concerning the above claims for tortious interference.

While Plaintiff attempts to assert one combined Cause of Action within the proposed Second Amended Complaint for unfair competition and business conversion, unfair competition and business conversion are separate torts. "The tort of common law unfair competition is

recognized in North Carolina 'as an offense committed in the context of competition between business rivals.' " Pan-American Products & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 697 (M.D.N.C. 2011) (quoting Henderson v. U.S. Fidelity & Guar. Co., 488 S.E.2d 234, 239-40 (N.C. 1997) ("The gravamen of unfair competition is the protection of a business from misappropriation of its commercial advantage earned through organization, skill, labor, and money.")). Whereas, the tort of business conversion is defined in North Carolina as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition to the exclusion of an owner's rights." State ex rel. Pilard v. Berninger, 571 S.E.2d 836, 844 (N.C. Ct. App. 2002) (internal quotations omitted). The allegations of wrongdoing, however, as to both Plaintiff's claim for unfair competition and business conversion, are the same. Therefore, the court will address the torts for unfair competition and business conversion together because, as stated above, torts arising out of a breach of contract are limited to those that are identifiable and distinct from the primary breach of contract claim. Broussard, 155 F.3d at 347 (4th Cir. 1998).

In this instance, Plaintiff argues that Defendants' large scale recruitment of NAA Agents shows conversion and was unfair. This same conduct is at the heart of Plaintiff's breach of contract claims alleging violations of the Defendants' non-solicitation agreements. In those Causes of Action in the proposed Second Amended Complaint, Plaintiff specifically alleges that Defendants solicited NAA Agents to leave their employment with Plaintiff. Accordingly, because the Cause of Action asserting unfair competition and business conversion are solely based on those same actions, such claims cannot be said to be identifiable or distinct from

Plaintiff's Causes of Action for breach of contract. Thus, any amendment to add such claims would be futile as such Cause of Action cannot exist alongside Plaintiff's existing breach of contract Causes of Action.[5]

5.    Civil Conspiracy

Plaintiff continues to assert its claim for civil conspiracy in its proposed Second Amended Complaint. Plaintiff asserts that each Defendant acted in concert with the other Defendants as to Plaintiff's other Causes of Action for breach of contract, tortious interference, and unfair competition and business conversion. Plaintiff alleges that such conduct was done pursuant to a common scheme or plan designed to damage NAA, and NAA has been damaged as a result. Defendants assert that Plaintiff failed to adequately plead this claim and they further argue that because the other tort claims should be dismissed, the conspiracy claim cannot stand. Thus, Defendants assert that any amendment is futile. To the extent that up to this point all of Plaintiff's second attempt to amend its complaint to add several tort claims are being denied, it is not clear that a claim of civil conspiracy can be sustained. In any event, the Court finds that Plaintiff failed to adequately plead the conspiracy claim and as a result any amendment to such

---

[5]The Court also notes that, not only is Plaintiff's claim for business conversion futile based on not being identifiable or distinct from Plaintiff's breach of contract Causes of Action, such claim would also likely be futile because "[i]n North Carolina, only goods and personal property are properly the subjects of a claim for conversion." Norman v. Nash Johnson & Sons' Farms, Inc., 537 S.E.2d 248, 264 (N.C. Ct. App. 2000). "[I]ntangible interests such as business opportunities and expectancy interests [are not] subject to a conversion claim." Id. Plaintiff is arguing that Defendants' converted NAA's business. "Business" is not a specific good or piece of property, but instead, is most likely an assertion that Defendants stole NAA's business opportunities or expectancies. Accordingly, for this reason, any claim for conversion based on the conversion of NAA's "business," would be futile.

claim would be futile.

In order to state a claim for civil conspiracy under North Carolina law, Plaintiff must allege that there was: "(1) an agreement between two or more persons to commit a wrongful act; (2) an act in furtherance of the agreement; and (3) damage to the plaintiff as a result." Eli Research, Inc. v. United Comm. Group, LLC, 312 F. Supp. 2d 748, 763 (M.D.N.C. 2004) (citing Pleasant Valley Promenade, L.P., v. Lechmere, Inc., 464 S.E.2d 47, 54 (N.C. Ct. App. 1995)). "[L]iability attaches as a result of the wrongful act committed, not the agreement itself." Eli Research, Inc., 312 F. Supp. 2d at 763 (citing Dickens v. Puryear, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981)). Thus, "the existence of an underlying tortious act is the key to establishing a civil conspiracy." Id. Plaintiff's proposed Second Amended Complaint has alleged numerous wrongful acts on the part of Defendants, including such acts as tortious interference and unfair and deceptive trade practice. Based on the above findings, however, the only remaining wrongful acts at issue are those based on Defendants' alleged breach of their non-solicitation agreements. "[I]n North Carolina, there is no independent cause of action for civil conspiracy; the claim can arise only where there is an underlying claim for unlawful conduct." Byrd v. Hopson, 265 F.Supp.2d 594, 599 (W.D.N.C.2003). While the Causes of Action for breach of contract remain at issue, it is unclear whether conduct resulting in a breach of contract can establish the basis for Plaintiff's civil conspiracy claim

Even if the breach of contract claims could serve as required wrongful act in this instance, Plaintiff failed to adequately plead a Cause of Action for conspiracy within its proposed Second Amended Complaint. As stated above, a civil conspiracy claim requires the allegation

that the parties had an agreement to commit the wrongful act. In Plaintiff's complaint, however, Plaintiff only states the following as to its civil conspiracy claim:

> Each Defendant has acted in concert with the other Defendants in each of the foregoing acts of misconduct. Such concerted actions were pursuant to a common plan or scheme designed to damage NAA. . . . NAA has been damaged as a result of the acts conducted in furtherance of Defendants' conspiracy. NAA is entitled to recover its damages against Defendants, jointly and severally.

(Prop. Sec. Amend. Compl. [Doc. #62-1], at 18.) Plaintiff did not state that Defendants had any type of agreement, and failed to allege any facts that would allow such a conclusion. See S.N.R. Management Corp. v. Danube Partners 141, LLC, 659 S.E.2d 442, 449 (N.C. Ct. App. 2008) (similarly finding that a complaint only alleging that the parties acted in concert did not state a claim pursuant to North Carolina law, because it failed to allege any agreement between the parties). Accordingly, the Court finds that the proposed amendment to state a claim for civil conspiracy would be futile and, thus, the proposed amendment will be denied.

      6.    Wiretapping

In opposing Plaintiff's Motion to Amend, Defendants lastly argue that the amendment of Plaintiff's Cause of Action within the proposed Second Amended Complaint for wiretapping is also futile. Plaintiff has alleged a wiretapping claim based upon an alleged violation of 18 U.S.C. § 2510 *et seq.* The proposed amendment has alleged that Defendant Meaike secretly recorded private telephone calls in which Andy Albright, the President of NAA, was a participant. Plaintiff has alleged that the recording was done in part to threaten, harass, and wrongfully pressure and coerce Albright to not enforce the Defendants' contracts. Furthermore, Plaintiff asserts that such recordings were made to gain an unfair business advantage and gain

concessions and other benefits from NAA. Defendants argue that such claim is futile because Plaintiff lacks standing to bring the wiretapping claim on Albright's behalf, as Albright is not a party to this action. Defendants also contend that the claim of wiretapping in violation of 18 U.S.C. § 2510, is not sufficiently plead. After reviewing the proposed Second Amended Complaint, the Court finds that Plaintiff has not sufficiently plead a Cause of Action for wiretapping. As such, the Court also finds, for the reasons that follow, that Plaintiff does not have standing to assert such claim.

Pursuant to 18 U.S.C. § 2520, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used" in violation of 18 U.S.C. § 2510 *et seq.* may recover damages for such violation. "Person" is defined for purposes of the statute as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation[.]" 18 U.S.C. § 2510. Accordingly, Plaintiff, as a corporation, may bring a wiretapping claim. The issue then, is whether or not the conversations involving Albright, the President of NAA, may be considered as part of the corporation's communications.

A corporation acts through its officers, employees, or agents. See Certain-teed Products Corporation v. Wallinger, 89 F.2d 427, 436 (4th Cir. 1937) ("A corporation can only act through its agents[.]"); see also In re Woodall, 177 B.R. 517, 522 n.2 (D. Md. 1995) ("A corporation acts only through its officers or employees.") (quoting In re Baird, 114 B.R. 198, 204 (9th Cir. 1990)); see also Iglesias v. Wolford, 539 F. Supp. 2d 831 (E.D.N.C. 2008) (finding that because a corporation's officers, employees, or agents are extensions of the corporation, any agreement

between such persons is not a conspiracy). As Albright is the President of NAA, it is certainly possible that many of his actions were on behalf of the corporation. Employees with lesser authority have been held to have been acting on behalf of their corporation or association for purposes of 18 U.S.C. § 2510 et seq. See Smoot v. United Transp. Union, 246 F.3d 633, 640 (6th Cir. 2001) (finding that conversations with the Director of Employee Relations constituted conversations with the corporation); see also Hatchigian v. International Broth. of Elec. Workers, Local Union No. 98, CIV.A. No. 97-7131, 1988 WL 100780, at *1(E.D. Pa. Sept. 27, 1988) (finding conversations with the local union's business manager constituted conversations with the association).

In both Smoot and Hatchigian, however, whether the corporation or association had standing to assert the wiretapping claims pursuant to 18 U.S.C. § 2510 *et seq.*, depended on the nature of the intercepted conversations. Specifically, both courts interpreted the wiretapping statute as requiring that the corporation or association to have a possessory interest in the intercepted communications in order to establish standing. See Smoot, 246 F.3d at 640; Hatchigian, 1988 WL 100780, at *1. This interpretation results from the statute's use of the phrase "any persons *whose* wire, oral, or electronic communication is intercepted[.]" 18 U.S.C. § 2520 (emphasis added). The Court finds such interpretation persuasive and in accordance with the plain meaning of the statute. In Smoot, the Sixth Circuit found that the corporation had a possessory interest in its Director of Employee Relations' statements concerning grievance adjustments for the corporation's employees, which were made at an arbitration hearing in an executive session held on the corporation's property. Similarly in Hatchigian, the Eastern

District of Pennsylvania found that the local union had a possessory interest in the communications of the local business manager of the union, which took place on a union telephone and which concerned the union's affairs.

In this action, it is not clear from the proposed Second Amended Complaint whether Plaintiff, as a corporation, has a possessory interest in the communications at issue involving Albright. Plaintiff does not a provide a description of the alleged intercepted telephone conversations. Instead, Plaintiff only states that Alright was a participant in the conversations and that such conversations were intercepted to threaten, harass, and wrongfully pressure and coerce Albright to not enforce the Defendants' contracts. Plaintiff also asserts that the communications were intercepted to gain an unfair business advantage and to gain concessions and other benefits from NAA. None of these assertions, however, provides the Court with the necessary information to determine whether Plaintiff has a possessory interest in such conversations. The Court is left without any information concerning the content of the communications or even the circumstances surrounding the conversations. Such communications may have been personal in nature and not undertaken for any business purpose. If so, Plaintiff would lack any possessory interest in the intercepted communications. Accordingly, because Plaintiff failed to allege sufficient facts to establish standing as to its Cause of Action for wiretapping, the Court finds that any amendment to such claim is futile.

B.      Motion to Dismiss

Based on the above findings, granting Plaintiff's Motion to Amend in part, Plaintiff's proposed Second Amended Complaint supercedes Plaintiff's First Amended Complaint.

Accordingly, because Defendants' arguments contained in its Motion to Dismiss, pertain to the Causes of Action in Plaintiff's First Amended Complaint, and not to those Causes of Action in Plaintiff's proposed Second Amended Complaint, Defendants' Motion to Dismiss is now moot and must be dismissed without prejudice to refiling based upon the allegations and content of the Second Amended Complaint. Hill v. Spartanburg Reg'l Health Servs. Dist., Inc., No. 7:13–271–MGL, 2013 WL 2395186, at *3 (D.S.C. May 31, 2013) ("Accordingly, the defendant's motion to dismiss . . ., which is directed at the original complaint, should be denied as moot because the original complaint was superseded by the plaintiff's amended complaint."); Anderson v. Consolidation Coal Co., No. 1:11CV138, 2012 WL 5331556, at *4 (N.D. W. Va. October 25, 2012) (dismissing pending motion to dismiss without prejudice to refiling after granting motion to amend complaint); see also 6 Charles Alan Wright et al., Federal Practice and Procedure § 1476, 636-37 (3d ed. 2010) (once an amended pleading is filed, "the original pleading no longer performs any function in the case.").

III.    CONCLUSION

In sum, for the reasons stated above, the Court grants in part and denies in part Plaintiff's Motion to Amend [Doc. #62]. Specifically, the Court denies Plaintiff's Motion to Amend as to all Causes of Action except for Plaintiff's Causes of Action based on breach of contract. Accordingly, the Court further denies Defendants' Motion to Dismiss [Doc. #31], without prejudice to refiling based upon Plaintiff's Second Amended Complaint if Defendants feel such filing is warranted.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Amend is GRANTED IN

PART and DENIED IN PART.  IT IS FURTHER ORDERED that Defendants' Motion to

Dismiss is DENIED WITHOUT PREJUDICE.

This the 10th day of November, 2014.

United States District Judge