IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SUPERIOR PERFORMERS, INC. d/b/a NATIONAL AGENTS ALLIANCE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:13CV1149 |
| SHAWN MEAIKE, MARC J. MEADE, BRYANT STONE, FRANK EUFEMIA, JAIME EUFEMIA, and MICHAEL SIZER, | ) ) ) ) ) | |
| Defendants. | ) ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

BEATY, District Judge.

This matter is currently before the Court on the Motion for Sanctions [Doc. #181] filed by Defendants, Shawn Meaike, Marc J. Meade, Bryant Stone, Frank Eufemia, Jaime Eufemia, and Michael Sizer and non-parties, Paul McClain and Family First Life, LLC ("FFL") (collectively the "Movants"). Plaintiff Superior Performers, Inc. ("Plaintiff" or "NAA") has filed a Response in Opposition to the Motion for Sanctions [Doc. #193], to which, Movants have filed a Reply [Doc. #201]. For the reasons discussed below, the Court will grant in part and deny in part Movants' Motion for Sanctions.

I.      FACTS AND BACKGROUND

This case is one of several related cases brought by Plaintiff in an attempt to, among other things, enforce restrictive covenants entered into by current and former NAA agents and

managers. During this case, discovery disputes have arisen between the parties. The particular discovery dispute at issue for purposes of this Motion for Sanctions, occurred as a result of certain evidence presented in conjunction with Plaintiff's Motion for Contempt. On April 11, 2014, Plaintiff filed the Motion for Contempt, arguing that Defendants violated the Preliminary Injunction issued by the Court. The Preliminary Injunction restrains Defendants from soliciting, or encouraging others to solicit, Plaintiff's current employees to leave employment with Plaintiff or to establish a relationship with Defendant Meaike's Company, FFL.

In support of Plaintiff's Motion for Contempt, Plaintiff presented circumstantial and direct evidence, which it argued supported a finding that Defendants violated the Preliminary Injunction. Included in this evidence was a voicemail received by NAA agent, George Wilson (hereinafter "Wilson voicemail"), and a similar call allegedly received by Todd Haggerty (hereinafter "Haggerty robocall"), both of whose cellular telephones purportedly indicated that the calls came from the main telephone number for FFL. Movants are now arguing that Plaintiff and its agents committed fraud upon the Court by fabricating the Wilson voicemail and submitting it as evidence in support of Plaintiff's Motion for Contempt.

In support of Movants' argument that Plaintiff and its agents fabricated the voicemail, Movants' argue that the telephone records show that no call was placed from FFL's main telephone line to Wilson's phone, nor is there any incoming call record on Wilson's phone from FFL's telephone line. Plaintiff does not dispute this assertion. Movants' also argue that the events occurring after Plaintiff's submission of the voicemail to the Court lead to a conclusion that Plaintiff and its agents attempted to conceal the actual source of the voicemail, making it

more likely that they had been the original source of the voicemail. In making this argument, Movants state that the Wilson voicemail was removed from Wilson's phone by way of a factory reset, after Wilson provided a declaration to this Court stating that he was preserving the voicemail. (Second Decl. of George Wilson [Doc. #119], at ¶ 7.) Plaintiff, in response, argues that Wilson performed the factory reset because he was giving the phone to his son and because the phone contained confidential business information that his son should not have.[1] Plaintiff further argues that it had no part in the reset, and additionally, all the data, including the voicemail, was transferred to Wilson's new phone, which Movants forensically examined.[2] In addition to Movants' arguments concerning the events surrounding the deletion of the voicemail, Movants also had an expert examine the voicemail. The expert concluded that the voice on the voicemail had been altered, which Plaintiff does not dispute. The expert further concluded that to a reasonable degree of scientific certainty, the voice on the voicemail was that of Michael Lewantowicz, who is an NAA Agent and good friend of Plaintiff's president, Andy Albright. In response to Movants' expert testimony, Plaintiff retained an expert who rebutted these conclusions, and instead, found that the voice on the voicemail was more likely to be that of Matt Jimino, who may be associated with Defendant Meaike.

---

[1] Movants claim that, while Wilson states in his affidavit that he purchased a new phone because he typically gets a new phone every few years, Wilson could not have had his phone for more than 13 months before getting a new phone. (See Wilson Aff. [Doc. #196] at ¶ 5.) Thus, Movants argue that this diminishes the credibility of Wilson's statements.

[2] The Court notes that during this forensic examination, Movants assert that they also located a Google search on Wilson's new phone for the phrase "how to wipe htc one 8." Movants assert that this is evidence of Plaintiff's and its agents' continued efforts to conceal their cover-up and delete data from the new phone.

Movants argue that based on the above described evidence, they are entitled to sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure,[3] and based on this Court's inherent power to impose sanctions. Specifically, Movants believe appropriate sanctions include, dismissing the case with prejudice, vacating the Preliminary Injunction, striking the Plaintiff's Motion for Contempt,[4] issuing a spoliation instruction at the appropriate times, and awarding monetary sanctions of at least the attorneys' fees and costs. In addition to these civil sanctions, Movants request that the Court refer the matter to the United States Attorneys' Office for further investigation. It appears that Movants believe they are entitled to such sanctions based on Plaintiff's alleged fabrication of the voicemail, as well as Plaintiff's alleged spoliation of the evidence.

II.     DISCUSSION

Federal courts have the inherent power to impose sanctions "for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45, 111 S. Ct. 2123, 2133, 115 L. Ed. 2d 27 (1991). Such conduct includes situations when the Court finds that "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. at 45-46 (internal quotations and citations omitted). The power to impose sanctions for such conduct, however, must be exercised with restraint and discretion. Id. at 45. Furthermore, some finding of fault is required for the imposition of sanctions. Silvestri v. General Motors, 271 F.3d 583, 590 (4th

_____

[3]The Court notes that Rule 37 does not appear to be applicable in this situation, as the events giving rise to the Motion do not fall within any of the enumerated provisions of Rule 37. See Fed. R. Civ. P. 37. Instead, the Motion is better brought pursuant to the Court's inherent power to impose sanctions.

[4]The Motion for Contempt was denied by the Court on July 31, 2014. [Doc. #192].

Cir. 2001). Appropriate sanctions may include everything from outright dismissal of an action to the assessment of attorney's fees. Chambers, 501 U.S. at 45. Whichever sanction the Court chooses to impose, must be the appropriate sanction for the conduct. Id.

Initially, the Court will evaluate Movants' argument for sanctions in relation to Plaintiff's alleged fabrication of the Wilson voicemail. The Movants have produced evidence, which may lead one to conclude that Plaintiff did in fact fabricate the voicemail. For instance, the evidence showing the deletion of data from Wilson's phone, the fact that call logs do not show a call coming from FFL's line to Wilson's phone, and inconsistent testimony from Wilson himself, tend to weigh in favor of fabrication on the part of Plaintiff and its agents. More importantly, Movants provided expert testimony that the voice on the voicemail was that of a person associated with Plaintiff, and Plaintiff's president. Plaintiff, however, has adequately countered this evidence and it has provided its own expert testimony that the voice is the voice of a person associated with Defendant Meaike. Accordingly, the Court finds that given the entirety of the evidence presented, it is not appropriate to award sanctions for the alleged fabrication of the voicemail, because it is unclear which party is responsible for the voicemail.

It is clear, however, that the voicemail was deleted from Wilson's phone and that Wilson himself was the responsible party. Movants argue that this conduct warrants the imposition of sanctions for spoliation of evidence. Courts may impose sanctions for spoliation under the above referenced inherent powers. King v. American Power Conversion Corp., 181 Fed. App'x 373, 376 (4th Cir. 2006). In evaluating a motion for sanctions for spoliation, courts have looked at the following three factors:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

Thompson v. U.S. Dept. of Housing and Urban Development, 219 F.R.D. 93, 101 (D. Md. 2003) (quoting Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)). In order to justify dismissal of a claim based on the spoliation of evidence, courts must look at the conduct of the alleged spoliator in conjunction with the prejudice caused to the moving party and be able to conclude either "(1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim." Silvestri, 271 F. 3d at 593.

Initially, the Court finds that dismissal for the spoliation of evidence is not warranted in this action. In this instance, the Movants, particularly the Defendants, are not substantially prejudiced in the ultimate conclusion of this matter. In fact, at first, the Wilson voicemail was evidence in support of Plaintiff's claim that Defendants were violating the non-solicitation provisions of their employment contracts. The loss of this evidence does not harm Defendants, but rather it appears to benefit Defendants. Movants may argue that they could use it to diminish the credibility of Plaintiff's claims if they had the original voicemail and could show that it was in fact fabricated by someone associated with Plaintiff. That is assuming, however, that the original recording would be beneficial in proving such an assertion. Furthermore, the loss of credibility evidence by no means *substantially* denies Defendants the ability to defend

against Plaintiff's substantive claims. The Court also notes that a copy of the voicemail is still available and Defendants are free to use such copy to attack the credibility of Plaintiff's claims if they so choose. Additionally, this was a loss of one piece of evidence showing only one instance of Defendants' alleged breach of contract in a case where Plaintiff alleges that Defendants "continually and repeatedly" violated their non-solicitation agreements. Such loss cannot be said to amount to a forfeiture of the entirety of Plaintiff's claims.

As to considering the three general factors regarding spoliation of evidence, however, the Court finds that it is appropriate to at least prevent the use of the Wilson voicemail at trial by Plaintiff. In considering the first element, the Court notes that Plaintiff may not have had control of the evidence, as the voicemail was not located on one of Plaintiff's phones, but as the proponent of the evidence, it is likely that Plaintiff had the duty to preserve the evidence. Even if a party does not physically control the evidence, the party "still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." Id. at 591. Plaintiff never attempted to provide Defendants with access to the phone, but instead only provided a copy of the voicemail. Additionally, Plaintiff did not provide notice of the voicemail's possible destruction, but instead, it filed Wilson's second declaration, which stated that he had "preserved the voicemail." (Second Decl. of George Wilson [Doc. #119], at ¶ 7.) Plaintiff provided this declaration to the Court and Defendants less than two weeks before Wilson performed a factory reset on his phone, which resulted in the deletion of the voicemail from the phone.

As to the second element, however, the evidence is questionable regarding whether

Wilson deleted the voicemail with a culpable state of mind. Wilson supposedly transferred all of the data on to his new phone and he did not destroy his first phone, but instead, he gave it to his son. Furthermore, as stated above, Plaintiff did not directly destroy the evidence. Lastly, as to the third element concerning the relevancy of the evidence, as stated above, ultimately the evidence is only relevant in terms of attacking the credibility of Plaintiff's claims. Again, that would assume Defendant could prove that the voicemail was fabricated based on the original recording of the voicemail. Nonetheless the evidence would not, standing alone, prove that Defendants did not breach their non-solicitation agreements. Accordingly, while the Court places some fault on Plaintiff for the loss of the original voicemail, the Court finds that a sufficient sanction for Plaintiff's actions is that the voicemail not be used or referenced at trial in any manner by Plaintiff, unless it is in response to Defendants' use of the copy of the voicemail. Furthermore, to the extent that the copy of the voicemail is referenced or used at trial, the Court will, at that time, determine whether a spoliation instruction is necessary.

III.    CONCLUSION

For the reasons stated above, the Court finds that Plaintiff has some degree of fault for the destruction of the original voicemail. That fault, however, does not constitute a basis for the imposition of the sanctions requested by the Movants. Instead, the Court finds that preventing Plaintiff from using the Wilson voicemail in support of its claims against Defendants is a sufficient sanction for Plaintiff's conduct. Furthermore, to the extent Defendants do use a copy of the voicemail or reference the voicemail at trial, the need for a spoliation instruction will be addressed at that time.

IT IS THEREFORE ORDERED that Movants' Motion for Sanctions [Doc. #181] is GRANTED IN PART and DENIED IN PART.

This the 4th day of February, 2015.

_____
United States District Judge