| | | |
|---|---|---|
| SUPERIOR PERFORMERS, INC. d/b/a NATIONAL AGENTS ALLIANCE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:13CV1149 |
| | ) ) | |
| SHAWN MEAIKE, MARC J. MEADE, BRYANT STONE, FRANK EUFEMIA, JAIME EUFEMIA, and MICHAEL SIZER, | ) ) ) ) ) | |
| Defendants and Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| ANDY ALBRIGHT, WILLIAM LAMPE, STEPHEN DAVIES, K.I.T. MARKETING, LLC, ADAM KATZ, PRO DATA RESEARCH, LLC, DIANE LAMPE, NOELLE LEWANTOWICZ, and MIKE LEWANTOWICZ, | ) ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is currently before the Court on the Motion to Dismiss the Amended Counterclaim and Third-Party Complaint [Doc. #219] filed by Plaintiff Superior Performers, Inc. ("Plaintiff" or "NAA") and Third-Party Defendants, Andy Albright, William Lampe, Stephen Davies, Adam Katz, Diane Lampe, Noelle Lewantowicz, Michael Lewantowicz, Pro

Data Research, LLC, and K.I.T. Marketing, LLC (the "Albright Group"). Defendants have filed a Response in Opposition to the Motion [Doc. #238], to which, Plaintiff and the Albright Group (collectively the "Movants") have filed a Reply [Doc. #240]. For the reasons discussed below, the Court will grant in part and deny in part the Movants Motion to Dismiss. Also before the Court is the Movants' Motion to Dismiss the Original Third-Party Complaint [Doc. #213]. As Defendants have since filed an Amended Third-Party Complaint and Counterclaim the Movants' Original Motion to Dismiss will be denied as Moot.

I.    BACKGROUND

This case is one of several related cases brought by Plaintiff in an attempt to, among other things, enforce restrictive covenants entered into by current and former NAA agents and managers. In response to Plaintiff's Amended Complaint, Defendants filed a combined answer, in which all Defendants asserted counterclaims against Plaintiff and third-party claims against the Albright Group. The Defendants assert that these claims arise out of Plaintiff's and the Albright Group's alleged operation of "pyramid scheme," and their actions related to such scheme, which includes the "unlawful churning and twisting of insurance policy-holders' insurance polices." Defendants claim that Plaintiff and the Albright Group are liable for fraudulently inducing Defendants into such scheme. Based on these alleged actions, Defendants assert a total of 12 claims against Plaintiff and the Albright Group and a claim for punitive damages.

First, Defendants assert a claim for declaratory judgment, requesting that the Court find that the agent and management agreements are invalid for lack of consideration among other

arguments. Second, Defendants assert a claim for rescission of the management and agent agreements based on multiple theories. Third, Defendants assert a claim for fraud against both Plaintiff and the Albright Group based upon the opposing parties' alleged fraudulent statements and omissions concerning various aspects of Defendants' employment with NAA. Fourth, Defendants also assert a claim against Plaintiff and the Albright Group based upon the opposing parties' alleged misrepresentation and suppression concerning various aspects of Defendants' employment with NAA. Fifth, Defendants assert a claim specifically against Plaintiff for breach of the duties of loyalty, due care, good faith, and fair dealing in relation to the management and agent agreements. Sixth, Defendants assert a claim for breach of contract against Plaintiff in relation to the management and agent agreements. Seventh, Defendants assert a breach of contract claim against the Albright Group for the breach of alleged oral and implied contracts or agreements concerning the alleged claims and promises made by such parties in relation to Defendants' employment with NAA. Eighth, Defendants assert a claim for defamation against both Plaintiff and the Albright Group concerning alleged statements about Defendants in their trade and business. Ninth, Defendants assert a claim of conversion against the Plaintiff based on Plaintiff's alleged wrongful withdrawal of funds from Defendants' bank and credit accounts. Tenth, Defendants assert a claim for unfair and deceptive trade practices against Plaintiff and the Albright Group, based on their alleged fraud and misrepresentations. Eleventh, Defendants assert a claim for tortious interference with business or contractual relations against Plaintiff and the Albright Group. Twelfth, Defendants assert a claim for civil conspiracy against Plaintiff and the Albright Group based on the allegation that they acted in concert in committing the above

3

violations. In addition to the substantive claims, Defendants also make a claim for punitive damages.

The Movants have jointly filed a Motion to Dismiss the Counterclaims and Third-Party Claims. In their Motion, the Movants argue that all claims filed by Defendants should be dismissed for improper joinder. Additionally, the Movants argue that except for Defendants' claim for declaratory judgment, all other counterclaims and third-party claims must be dismissed for failure to state a claim. In response, Defendants' argue that the Albright Group are proper Third-Party Defendants, pursuant to Rules 14, 19, and 20 of the Federal Rules of Civil Procedure, and Defendants did adequately plead their claims against the Movants. For the reasons stated below, the Court will grant in part and deny in part the Movants' Motion to Dismiss.

## II. DISCUSSION

The Movants assert alternative theories for dismissal.[1] First, the Movants seek dismissal of Defendants' claims based on arguments concerning improper joinder. Second, the Movants seek dismissal based on Rule 12(b)(6) for failure to state a claim. Accordingly, these issues will be discussed in turn.

### A. Improper Joinder

In Case Number 1:14CV232, which is consolidated with the above-captioned case, this

---

[1] The Movants also briefly state that Defendants' claims against Plaintiff and the Albright Group are indistinguishable and should be dismissed for such reason. The Court, however, has previously addressed a similar argument in Case Number 1:14CV232. (See Mem. Op. and Order, Case No. 1:14CV232 [Doc. #46], at 15.) For the same reasons as this Court provided in Case Number 1:14CV232, this argument is without merit.

4

Court addressed the Movants' arguments concerning the joinder of the Albright Group as Third-Party Defendants in great detail. (See Mem. Op. and Ord., Case No. 1:14CV232 [Doc. #46].) In that Memorandum Opinion and Order, the Court specifically found that the individuals comprising the Albright Group in that particular case were proper Counterclaim Defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure, but were not properly joined under Rule 14 or Rule 19. In so finding, the court directed the Defendants to file an Amended Answer and Counterclaim reflecting that the Albright Group were Counterclaim Defendants, rather than Third-Party Defendants.

A day after this Court entered that ruling, the Movants filed the Motion to Dismiss at issue in this action, asserting similar if not the same arguments concerning joinder that the Court had addressed in great detail a day earlier. As this Court has previously addressed the joinder arguments, any further discussion would be a waste of judicial resources. Accordingly, the Court finds that the same reasons provided in its Memorandum Opinion and Order denying the Movants' Motion to Dismiss the Third-Party Claims in Case Number 1:14CV232 for improper joinder also apply in this case. Accordingly, the Court will deny Movants' Motion to Dismiss the claims for improper joinder and finds that Defendants' claims against the Albright Group are properly before this Court pursuant to Rule 20 of the Federal Rules of Civil Procedure.[2]

B.      Failure to State a Claim

---

[2]The Court notes that Defendants assert additional arguments, not provided in its briefing in Case Number 1:14CV232, concerning why Defendants believe joinder is proper under Rule 19 of the Federal Rules of Civil Procedure. The Court, however, need not address this argument, as Rule 20 provides a proper basis for Defendants' claims against the Albright Group, and further discussion of the joinder issue would be unnecessary.

5

In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Fourth Circuit has directed that courts " 'take the facts in the light most favorable to the plaintiff,' but '[they] need not accept the legal conclusions drawn from the facts,' and '[they] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.' " Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "To survive a motion to dismiss, a [claim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a [claim] pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955) (citations omitted). Thus, dismissal of a claim is proper where a plaintiff's factual allegations fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.' " Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 683, 129 S. Ct. 1937).

6

The Movants next argue that if the Court does not dismiss the counterclaims and third-party claims for improper joinder, the Court should nevertheless, find that Defendants have failed to state a claim as to all claims other than Defendants' claim for declaratory judgment. The Court will therefore address each of the 11 other claims, in addition to Defendants' claim for punitive damages in turn.

1.    Rescission - Second Count

The Defendants' second counterclaim, which is asserted specifically against Plaintiff, seeks the rescission of Defendants' agent and management agreements that are at issue in Plaintiff's case-in-chief. Defendants assert that they are entitled to rescission of these agreements because the agreements were the result of material misrepresentations and omissions, duress, and because such agreements are unconscionable contracts of adhesion. The Movants assert that the claim for rescission must be dismissed because Defendants have failed to meet the pleading standards for any of the theories under which the Defendants base their claim for rescission.

The Court initially notes that rescission itself is not a cause of action but rather, rescission is an equitable remedy. See Marriott Financial Services, Inc. v. Capitol Funds, Inc., 217 S.E. 2d 551, 560–64 (N.C. 1975) (analyzing a claim for the equitable remedy of rescission based on mistake or fraud). Accordingly, in order to state a claim for the remedy of rescission, Defendants must have stated a plausible underlying claim for such relief. See Synovus Bank v. Okay Properties, LLC, No. 1:11CV330, 2012 WL 3745280, at *8 (W.D.N.C. August 28, 2012) (finding that because the defendants' counterclaim for rescission was based on fraud, the

7

defendants must have stated a plausible claim for fraud). Movants first argue that Defendants are not entitled to rescission for fraud because Defendants failed to meet the pleading standards for fraud. As this Court will more fully address below as to Defendants' specific fraud claim, the Defendants have in fact adequately pled their claim of fraud against Plaintiff and the Albright Group. Accordingly, because Defendants have adequately pled fraud, they may maintain their claim for rescission of the agent and management agreements based on such theory.

The Movants next argue that Defendants failed to adequately plead duress, and therefore are not entitled to rescission of the agreements based on such theory. North Carolina allows a party to avoid contractual obligations under a contract if the party entered into such contract under duress. In re Maco Homes, Inc., No. 95-2938, 95-2939, 1996 WL 511494, at *4 (4th Cir. Sept. 10, 1996). In order to establish economic duress, a party must show:

> (1) a threatened breach that the promised performance will not be received and that breach will result in irreparable injury; (2) the threat is effective because of economic power not derived from the contract itself; (3) the threatened party could not enter into a contract with a third party replacing the threatening party, i.e., the party could not obtain the 'goods' from another source of supply; and (4) there is no immediate legal remedy available.

G.E.B. v. QVC, Inc., 129 F. Supp. 2d 856, 861 (M.D.N.C. 2000) (citing Rose v. Vulcan Materials Co., 194 S.E.2d 521, 536–37 (N.C. 1973).

After reviewing Defendants' 82 page Counterclaim Complaint, the Court finds that Defendants have not adequately pled that the agreements were entered into as a result of economic duress. Defendants assert that the only obligation Plaintiff had under the contract was

to use commercially reasonable efforts to make insurance leads[3] available to Defendants. Defendants argue that Plaintiff threatened to withhold this obligation if Defendants did not join mandatory clubs, pay for worthless training, or conduct workshops, meetings, and seminars at their own cost. Thus, Defendants are not asserting that they entered into the agreements as a result of economic duress, but rather that they were forced into doing extra-contractual activities, such as joining mandatory clubs, *after* they entered into the agreement. Accordingly, because Defendants have not asserted that they entered into the agreements as a result of being forced to engage in the extra-contractual activities, Defendants cannot base their claim for rescission on a theory of economic duress.

The Movants also argue that Defendants cannot assert their claim for rescission based on unconscionability of the agreements. To state a plausible claim for unconscionability, a party must assert that the agreement is both procedurally and substantively unconscionable. <u>Tillman v. Commercial Credit Loans, Inc.</u>, 655 S.E. 2d 362, 370 (N.C. 2008). "[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." <u>Id.</u> (citations omitted). "Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms." <u>Id.</u>

The Court finds that Defendants Counterclaim Complaint taken as a whole, does in fact plead the necessary elements of unconscionability for purposes of Rule 12(b)(6). First,

---

[3]Defendants define the term leads as "names of people who are supposedly interested in buying insurance[.]" (Counterclaim Complaint [Doc. #215], at 5.)

Defendants have asserted procedural unconscionability, as Defendants refer to the fact that in order to gain access to Plaintiff's website to obtain leads, they were required at various times to check a box consenting to the agreements or they were locked out of the website. Furthermore, Defendants assert that the terms of these agreements were concealed and obstructed by Plaintiff. See Wilkerson ex rel. Estate of Wilkerson v. Nelson, 395 F. Supp. 2d 281, 289 (M.D.N.C. 2005) ("It may be that the arbitration agreement was drafted and positioned in a manner that would avoid drawing undue attention to its terms, and may constitute procedural unfairness."). Accordingly, Defendants have asserted procedural unconscionability. Additionally, Defendants have asserted substantive unconscionability, based on what Defendants argue are unfair terms, including requiring Defendants to expend substantial sums of money on things such as joining clubs and participating in training sessions. While these terms cannot serve as a basis for rescission for economic duress, the unfair terms may serve to establish substantive unconscionability. Thus, at this time Defendants have adequately pled both procedural and substantive unconscionability so as to support their claim for rescission. As a result of Defendants adequately pleading the underlying theories of fraud and unconscionability, Defendants' Counterclaim for the equitable right of rescission, will only be dismissed insomuch as it is premised on a theory of economic duress.

2.     Fraud - Third Count

In support of their Motion to Dismiss for failure to state a claim, the Movants argue that Defendants have not pled their fraud claim with sufficient particularity. Specifically, the Movants argue that Defendants have not alleged which individual entity or person committed

10

the various acts of fraud. Rule 9(b) of the Federal Rules of Civil Procedure provides that a party alleging fraud "must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Courts interpret this particularity requirement as requiring that parties plead the " 'time, place, and contents of the alleged fraudulent representation, as well as the identity of each person making the misrepresentation and what was obtained thereby.' " Liner v. DiCresce, 905 F. Supp. 280, 287 (M.D.N.C. 1994) (quoting Riley v. Murdock, 828 F. Supp. 1215, 1225 (E.D.N.C. 1993)). The requirement that the identity of each person making the misrepresentation be pled with particularity is especially important in a multi-defendant, or multi-counterclaim defendant case. Dealers Supply Co., Inc. v. Cheil Industries, Inc., 348 F. Supp. 2d 579, 589–90 (M.D.N.C. 2004). Thus, where there are multiple parties involved in the fraud, the claimant must allege all claims with particularity as to each party. Id.

After reviewing Defendants' extensive Counterclaim Complaint, the Court finds that taking the document as a whole, Defendants have adequately pled their claim for fraud against Plaintiff and the various members of the Albright Group. It is correct that under the particular count of fraud listed in Defendants' Counterclaim Complaint, the allegations of fraud are stated generally against all Movants. Defendants, however, in the earlier part of the Counterclaim Complaint specifically list out the various misrepresentations that were made by the specific individual Movants within the Counterclaim Complaint or that were made on behalf of Plaintiff by way of Plaintiff's agents or employees. These allegations are incorporated by reference into the fraud count. The following is a list of examples of at least one allegation of fraud against each of the particular Movants:

- Plaintiff - "[B]oth Andy Riddle and NAA agent Mark Womack, while working as actual insurance agents of NAA and acting as legal agents of NAA, affirmatively stated that NAA 'does not make money off of leads,' that NAA 'only produced direct mail leads,' and only used direct mail leads during the training sessions." (Counterclaim Complaint, [Doc. #215], at 18.) Defendants assert that these statements were false.
- Andy Albright - "Also in June of 2008, Albright represented to Meaike that NAA had a mortgage protection lead program and that NAA did not make any profit on the sale of leads." (Id. at 41–42.) Defendants assert that this statement by Albright was false.
- Stephen Davies - "[T]hroughout . . . the in-person recruiting meetings conducted by . . . Davies . . . and others on NAA's behalf, NAA and the other NAA Defendants make comparisons of the amounts they say agents make working for NAA to the wages those same agents earned working for their previous employers." (Id. at 14.) This statement was made in conjunction with the representation that such amounts were false.
- Adam Katz - "NAA and Katz represented on their websites to [Defendants] and others that Katz has an annual income level from NAA of over $1,000,000." (Id. at 13.) This statement was made in conjunction with the representation that such amount was false.
- Mike Lewantowicz - "[T]hroughout . . . the in-person recruiting meetings conducted by . . . M. Lewantowicz . . . and others on NAA's behalf, NAA and the other NAA Defendants make comparisons of the amounts they say agents make working for NAA to the wages those same agents earned working for their previous employers." (Id. at 14.) This statement was made in conjunction with the representation that such amounts were false.
- Noelle Lewantowicz - "[T]hroughout . . . the in-person recruiting meetings conducted by . . . N. Lewantowicz . . . and others on NAA's behalf, NAA and the other NAA Defendants make comparisons of the amounts they say agents make working for NAA to the wages those same agents earned working for their previous employers." (Id. at 14.) This statement was made in conjunction with the representation that such amounts were false.
- William Lampe - "NAA and Albright continued to change the hierarchy structure even though the Eufemias were told by Bill and Diane Lampe and others at NAA (including Albright) that any commission rate, contract rate or commission structure that they obtained would never be reduced." (Id. at 53.) Defendants assert that this statement was false.
- Diane Lampe - "NAA and Albright continued to change the hierarchy structure even though the Eufemias were told by Bill and Diane Lampe and others at NAA (including Albright) that any commission rate, contract rate or commission structure that they obtained would never be reduced." (Id. at 53.) Defendants assert that this statement was false.

- Pro Data Research, LLC- "Additionally, on multiple occasions, after the [Defendants] spent substantial sums of money recruiting agents and building their teams in a particular area, NAA and PDR would allocate leads for the area only to the agents in the area that were directly downline to NAA or Albright . . . rather than the agents on the [Defendants'] teams[.]" (Id. at 29.) This statement was made in conjunction with the representation that such actions were contrary to what had been previously represented to Defendants.
- K.I.T. Marketing, LLC - "NAA's agents are pressured to purchase and pay periodic payments to KIT Marketing for these services, which the agents are told will benefit them by having someone keep in touch with the customers on the agents' behalf and in the name of the agent. However, NAA's agents do not know, because it is kept secret from them, that KIT Marketing an NAA are being used against the agents, to churn the agents' customers by churning the insurance policy-holders' insurance policies." (Id. at 36–37.)

Accordingly, the Movants' argument that the fraud claims were not pled with particularity is without merit to the extent that the Movants contend that Defendants did not identify which entity or individual made the misrepresentations constituting the fraud. Instead, as noted above, Defendants' Counterclaim Complaint references specific misrepresentations made by or on behalf of the individual Movants.

3.    Misrepresentation/Suppression - Fourth Count

Defendants' fourth counterclaim, is a claim for misrepresentation and suppression. Defendants assert that the Movants made specific misrepresentations and concealed other material facts concerning Defendants' employment with NAA. The Movants argue that this claim should be dismissed because it has the same deficiencies as Defendants' claim for fraud. The Movants further argue that the misrepresentation claim should be dismissed because Defendants have failed to allege any facts that would give rise to a legally recognized duty to disclose information. Additionally, the Movants assert that Defendants' suppression claim should be dismissed because such a claim does not exist in North Carolina. The Court initially

13

notes that because the Court found above that the fraud claim is sufficiently pled, the Movants first argument that this claim fails for the same reason as the fraud claim is without merit. The Court will, however, specifically address the other two remaining arguments concerning this claim.

Pursuant to North Carolina law, "[t]he tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." Raritan River Steel Co. v. Cherry Bekaert & Holland, 367 S.E. 2d 609, 612 (N.C. 1988). Breach of the duty of care may occur when "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, . . . is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Kindred of North Carolina, Inc. v. Bond, 584 S.E. 2d 846, 853 (N.C. Ct. App. 2003) (quoting Jordan v. Earthgrains Cos. Inc., 767, 576 S.E. 2d 336, 340 (N.C. Ct. App. 2003)).

The above examples of the alleged fraudulent misrepresentations made by each party show that Defendants have sufficiently alleged facts indicating that the Movants owed Defendants a duty of care for supplying false information in their business transactions. All of the alleged false information was provided to the Defendants in the context of their employment with NAA, and Defendants allege that such information caused them to sign the agent and management agreements at issue and to continue to expend money in relation to NAA.

14

Furthermore, Defendants allege that the structure of NAA is that of a pyramid scheme, and all NAA agents are either above the Defendants in the hierarchy or are the corporate entities employing or contracting with Defendants. Thus, it can be inferred that the Movants had a pecuniary interest in Defendants' continued employment with NAA as they were presumably financially benefitting from those below them in the alleged pyramid hierarchy. For these reasons, the Court finds that Defendants have sufficiently pled facts supporting a claim for misrepresentation based on a breach of the duty of care.

Defendants' claim for suppression, however, will be dismissed. As this Court has previously found in two other instances, to the extent that Defendants' misrepresentation claim is based on negligent concealment or omission, as opposed to affirmative misrepresentation, no such claim currently exists under North Carolina law. Breeden v. Richmond Community College, 171 F.R.D. 189, 202–02 (M.D.N.C. 1997); Pearson, v. Gardere Wynne Sewell LLP, 814 F. Supp. 2d 592, 608 n.11 (M.D.N.C. 2011). Accordingly, Defendants' claim for suppression, which is based on the concealment of facts will be dismissed.

4. Breach of Duties of Loyalty, Due Care, Good Faith, and Fair Dealing – Fifth Count

Defendants' fifth counterclaim alleges that NAA breached the duties of loyalty, due care, good faith, and fair dealing that are implied in the agent and management agreements. The Movants argue that Defendants did not allege any specific conduct that would breach any of the express terms of the contract, and thus, they argue that Defendants cannot assert a breach of the duties of good faith and fair dealing.

15

Pursuant to North Carolina law, all contracts contain " 'an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.' " Sunset Beach Development, LLC v. AMEC, Inc., 675 S.E. 2d 46, 57 (N.C. Ct. App. 2009) (quoting Bicycle Transit Authority, Inc. v. Bell, 333 S.E.2d 299, 305 (N.C. 1985)). In this instance, Defendants have asserted that if a valid contract exists, NAA has breached its obligation under such contract to use commercially reasonable efforts to make insurance leads available to Defendants. (Counterclaim Complaint, [Doc. #215], at 25–26.) Defendants further detail the way in which this obligation was breached. (Id.) For instance, Defendants assert that NAA conditioned providing leads to Defendants on criteria, such as the Defendants' payment to NAA for add-on expenses that were not previously disclosed to Defendants. Accordingly, Defendants have sufficiently pled that NAA took actions that injured Defendants' right to receive the benefits they were owed under the contract. As such, the Court will deny the Movants' Motion to Dismiss Defendants' counterclaim for breach of the duties of duties of loyalty, due care, good faith, and fair dealing.[4]

5.     Breach of Contract Claims - Sixth and Seventh Counts

The sixth counterclaim that Defendants assert is a beach of contract claim against NAA. The Movants assert that this claim should also be dismissed for the same reasons that the Movants sought to have the Defendants' breach of the duties of good faith and fair dealing

---

[4]The Court notes that the Movants do not argue that Defendants failed to adequately plead a breach of the duties of loyalty and due care. Instead, the Movants focus their argument solely on the duties of good faith and fair dealing. As such, Defendants' claims for breach of the duties of loyalty and due care remain as validly stated claims against the Movants.

16

dismissed. The Movants again argue that Defendants have not alleged any specific conduct that would breach any of the express terms of the contract. As the Court found above, however, Defendants have sufficiently pled that NAA breached its contractual obligation to use commercially reasonable efforts to make insurance leads available to Defendants. Accordingly, the Court will deny the Movants' Motion to Dismiss Defendants' claim for breach of contract against NAA.

The Defendants also assert a breach of contract claim against the Albright Group. This claim is based on a breach of oral or implied contracts. The Movants argue that this claim must be dismissed because Defendants have failed to assert any promises that the Albright Group made to Defendants or how such promises were breached. Additionally, the Movants argue that this claim conflicts with the express terms of the actual written agreements and that it conflicts with the merger clause contained in the actual agreements.

To state a claim for breach of contract, a party must allege the, "(1) existence of a valid contract and (2) breach of that contract." Poor v. Hill, 530 S.E. 2d 838, 845 (N.C. Ct. App. 2000). Initially, the Court notes that Defendants have in fact alleged specific promises made by the Albright Group. For instance, Defendants allege that the Albright Group promised that "[Defendants'] businesses, including their customers and clients, and the agents they recruit to be part of their downline, could never be taken away." (Counterclaim Complaint, [Doc. #215], at 17.) Later in the Counterclaim Complaint, Defendants assert that this promise was broken, as the Defendants' downlines were removed. (Id. at 27.) Accordingly, Defendants have sufficiently alleged certain promises made by the Albright Group and sufficiently alleged that

17

such promises were broken.

Furthermore, the argument that the merger clause subsumes these promises or that they are contradicted by the express terms of the written contract are without merit at this stage of the litigation. The written contracts were not entered into between the Albright Group and the Defendants, but rather the contracts were entered into between NAA and the Defendants. Therefore, because the written agreements are not agreements between the Albright Group and Defendants, it is unclear how such agreements would control the effect of the alleged promises between Defendants and the Albright Group. Accordingly, the Court will deny Movants' Motion to Dismiss Defendants' claims for breach of contract against NAA and the Albright Group.

### 6. Defamation - Eighth Count

Defendants' eighth counterclaim is a claim for defamation in which they assert that the Movants published defamatory statements about the Defendants. The Movants argue that this claim for defamation should be dismissed because Defendants failed to specifically allege the defamatory statements made by any of the Movants. Additionally, the Movants argue that the defamation claims cannot succeed against any of the corporate entities, NAA, K.I.T. Marketing, and Pro Data Research, because comments made after Defendants' termination cannot be attributed to the corporate employer.

To establish a defamation claim under North Carolina law, a party must prove: "(1) defendant spoke [or published] base or defamatory words which tended to prejudice him in his reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or

contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person." West v. King's Dept. Store, Inc., 365 S.E.2d 621, 624 (N.C. Ct. App. 1994) (citations omitted). The Movants argue that the first element is insufficiently pled because Defendants have not indicated the particular statements that were made by each Movant. In support of the contention that this lack of specificity requires dismissal, the Movants cite two North Carolina Court of Appeals cases. However, as this case is before a federal court and not a North Carolina state court, the Federal Rules of Civil Procedure concerning pleading apply.

The Fourth Circuit has concluded that the Federal Rules of Civil Procedure do not require a heightened or special pleading standard for defamation claims. Moore v. Cox, 341 F. Supp. 2d 570, 575 (M.D.N.C. 2004). Accordingly, the pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure, in conjunction with "the universally accepted and mandatory authorities of Twombly and Iqbal, adequately and accurately set forth the standard of review" that is to be applied to the Movants' Motion to Dismiss. Araya v. Deep Dive Media, LLC, 966 F. Supp. 582, 588 (W.D.N.C. 2013).

In Defendants' Counterclaim Complaint, Defendants allege that,

NAA, Albright, Davies, Katz, M. Lewantowicz, N. Lewantowicz, W. Lampe, and D. Lampe have been systematically attempting to destroy [Defendants'] reputations by lying and otherwise intentionally and recklessly broadcasting and publishing untrue statements of fact . . . about [Defendants'] and their affiliates' ethics, morals, and character; their performance while working with NAA; their reasons for leaving; that [Defendants'] are "under federal indictment," that [Defendants] and Family First Life . . . are being prosecuted both civilly and criminally, that NAA and Albright are going to have them thrown in jail, and various other matters.

19

(Counterclaim Complaint, [Doc. #215], at 38–39.)  Additionally, Defendants provide a specific example of the statements that were made on behalf of Albright and NAA by non-party Todd Haggerty.  (Id. at 39.)  Through these allegations, the Court finds that Defendants have sufficiently alleged that NAA, Albright, Davies, Katz, M. Lewantowicz, N. Lewantowicz, W. Lampe, and D. Lampe have made defamatory statements against Defendants.  While Defendants do not provide particular statements made by each of these Movants, Defendants do provide defined categories of statements which provide reasonable notice to the parties as to the claims that Defendants are asserting against them.  The categories are not just conclusory statements, but instead, the categories provide sufficient factual content so as to allow the Court to draw the reasonable inference that the particular Movants proffered such statements.

The Court, however, does note that Pro Data Research and K.I.T. Marketing were not alleged to have made any defamatory statements.  Thus, the defamation claim must be dismissed as to both Pro Data Research and K.I.T. Marketing for failure to state a claim against such entities.  Additionally, as the statements described above appear to have been made after Defendants left employment with NAA, those statements cannot be attributed to NAA.  See Gibson v. Mutual Life Ins. Co. of New York, 465 S.E. 2d 56, 59 (N.C. Ct. App. 1996) (finding that because statements were made after party was terminated from employment, the statements could not, as a matter of law, be imputed to the employer) (citing Stutts v. Power Co., 266 S.E.2d 861, 865 (N.C. Ct. App. 1980)).  Accordingly, the defamation claim must also be dismissed as to NAA, in addition to Pro Data Research and K.I.T. Marketing.

7.    Conversion - Ninth Count

20

Defendants' claim for conversion against NAA alleges that NAA withdrew funds from the Defendants' bank accounts, which NAA did not have the authority to withdraw. Additionally, Defendants assert that any prior authorization to withdraw such funds had been revoked at the time some of the funds were withdrawn. The Movants argue that this claim should be dismissed because it is barred by the express terms of the agent and managements agreements. Specifically, the Movants assert that the agent and management agreements require that the Defendants provide NAA with notice of any discrepancies in their accounts within 30 days from the date that Defendants receive their bank statements. The Movants argue that because notice was not provided within 30 days, any claim is time barred.

Pursuant to North Carolina law, the two essential elements that are necessary to state a claim for conversion are: "(1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant." Bartlett Milling Co., L.P. v. Walnut Grove Auction and Realty Co., Inc., 665 S.E. 2d 475, 489 (N.C. Ct. App. 2008) (citation omitted). The Movants do not argue that Defendants failed to plead either of these two elements, but instead, the Movants argue that the claim is time barred based on the agreements. The Court finds that the Movants' argument is without merit. First, Defendants, in their Counterclaim Complaint, seek a declaratory judgment that those same agreements are void and unenforceable. Therefore, if the Court does find such agreements to be unenforceable, any time period set forth in such agreements for providing notice would necessarily be unenforceable. Second, Defendants argue that even after the employment relationship ended, NAA was still making unlawful withdraws from their bank accounts at a time when the agreements were allegedly no longer applicable. Accordingly, even if the time period

provided in the agreement would bar Defendants' conversion claim, it is not clear at this time that such agreement is enforceable. For those reasons, the Court will deny the Movants' Motion to Dismiss Defendants' counterclaim for conversion.

8.    Unfair and Deceptive Trade Practices Act - Tenth Count

The Movants next seek to dismiss the tenth claim of Defendants' Counterclaim Complaint, which alleges a violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). In this claim, Defendants assert that the Movants' fraud, false statements, and misrepresentations set forth in the Counterclaim Complaint constitute unfair and deceptive practices. The Movants, however, assert that such claim must be dismissed because Defendants have failed to properly allege any claims of fraud and the Defendants' allegations regarding the use of insured client contact information are contradicted by the express terms of the agreement. Additionally, the Movants argue that Defendants' allegations that the lead practices constitute unfair and deceptive practices can only be asserted under a breach of contract theory because such allegations fall within the express terms of the parties' agreements.

Initially, the Court notes that the Movants' first two arguments for dismissal are faulty for the reasons more fully stated above in relation to Defendants' other claims. First, the Court found above that Defendants have sufficiently stated a claim for fraud against the Movants. Thus, the Movants argument that the UDTPA claim fails as a result of the fraud claim failing, is without merit. Second, as stated above in relation to Defendants' claim for conversion, the Defendants seek a declaratory judgment that the agreements between the parties are void and unenforceable. Accordingly, if the Court does find such agreements to be unenforceable, any

22

of the alleged contradicting terms would be unenforceable. Thus, an argument that any part of the UDTPA claim must be dismissed because it contradicts the terms of the agreement is also without merit.

Furthermore, the Movants' argument that Defendants' allegations regarding lead practices can only be asserted under a breach of contract theory is equally without merit. As this Court has stated in a previous Memorandum Opinion and Order issued in this case, the economic loss doctrine "prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law." Lord v. Customized Consulting Specialty, Inc., 643 S.E. 2d 28, 30 (N.C. Ct. App. 2007). Therefore, "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 240 S.E.2d 345, 350 (1978). Rather, tort claims are limited to those that are identifiable and distinct from the primary breach of contract claim. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998).

In this action, Defendants are asserting a breach of contract claim. Such claim, however, is based on NAA's alleged breach of its contractual obligation to use commercially reasonable efforts to make insurance leads available to Defendants. Defendants' UDTPA claim is not based on such an alleged breach. Instead, Defendants base such claim on the Movants' alleged fraud, false statements, and misrepresentations. These allegations are separate and distinct from Defendants' claim for breach of contract. Accordingly, the Court will deny the Movants' Motion to Dismiss Defendants' UDTPA claim as it is not prohibited by the economic loss doctrine. Rather, Defendants' UDTPA claim is based on the claims of fraud, false statements,

23

and misrepresentations made by the Movants, which are not related to nor do such claims give rise to Defendants' breach of contract claim based on NAA's alleged breach of its contractual obligations.

9.      Tortious Interference with Business or Contractual Relationships - Eleventh Count

Defendants' eleventh counterclaim is a claim for tortious interference with business or contractual relationships. In this claim, Defendants allege that the Movants have intentionally induced various insurance carriers to not perform or terminate contracts with Defendants. The Movants assert that pursuant to the terms of the agent and management agreements, Defendants are prohibited from contracting with these insurance carriers, and as a result, any claim for tortious interference is restricted by such terms.

This argument is without merit. Defendants seek a declaratory judgment that such agreements are void and unenforceable. Accordingly, as this Court stated above in relation to Defendants' claim for conversion, if the Court does find such agreements to be unenforceable, any of the alleged contradicting terms would be unenforceable and inapplicable to the viability of Defendants' counterclaims. Thus, the Court will Deny Movants' Motion to Dismiss Defendants' tortious interference claim based on the argument that such claim contradicts the agreements between Defendants and NAA.

10.      Civil Conspiracy - Twelfth Count

The twelfth count of Defendants' Counterclaim Complaint alleges a claim for civil conspiracy against Plaintiff and the Albright Group. Defendants assert that the individual

members of the Albright Group have conspired with each other and with Plaintiff to commit the other torts alleged in the Counterclaim Complaint. The Movants argue that Defendants have not alleged sufficient facts to support the allegation that an agreement existed between the individual Movants.

In order to state a claim for civil conspiracy under North Carolina law, a claimant must allege that there was: "(1) an agreement between two or more persons to commit a wrongful act; (2) an act in furtherance of the agreement; and (3) damage to the [claimant] as a result." Eli Research, Inc. v. United Comm. Group, LLC, 312 F. Supp. 2d 748, 763 (M.D.N.C. 2004) (citing Pleasant Valley Promenade, L.P., v. Lechmere, Inc., 464 S.E. 2d 47, 54 (N.C. Ct. App. 1995)). While the Movants argue that sufficient facts have not been pled to show an agreement existed, the Court finds that, after a review of the Counterclaim Complaint, such facts were in fact, sufficiently pled. Specifically, at least as it relates to the allegations of defamatory statements and fraudulent misrepresentations, the Defendants allege that the Movants acted in concert and through a joint enterprise to make such defamatory statements and fraudulent misrepresentations. (Counterclaim Complaint, [Doc. #215], at 40.) These allegations provide sufficient detail to allege an agreement at this stage of the litigation. Accordingly, the Court will deny the Movants' Motion to Dismiss insomuch as it relates to Defendants' civil conspiracy claim.

11.    Punitive Damages

Defendants' last claim in their Counterclaim Complaint, which they label as a thirteenth count, is a claim for punitive damages. Defendants assert that they are entitled to punitive

damages based on the alleged conduct contained in the claims that proceed the punitive damages claim. The Movants argue that this claim should be dismissed because, other than Defendants' claim for declaratory judgment, all other claims should be dismissed and a claim for declaratory judgment does not entitle Defendants to compensatory damages. The Movants' assert that without a claim entitling Defendants to compensatory damages, the claim for punitive damages cannot stand. As this Court has not dismissed the entirety of the claims described above, the Movants' argument is without merit, as Defendants may be entitled to compensatory damages for the remaining counterclaims. Accordingly, Defendants' counterclaim for punitive damages will not be dismissed.

## III. CONCLUSION

In sum, for the reasons stated above, the Movants' Motion to Dismiss the Amended Counterclaim and Third-Party Complaint is granted in part and denied in part. Specifically, the Motion to Dismiss is granted as to Defendants' claim for rescission based on duress, the suppression claim, and the defamation claim insomuch as it relates to the corporate Movants, NAA, K.I.T. Marketing LLC, and Pro Data Research, LLC. The Motion to Dismiss, however, is denied as to Defendants' rescission claim based on fraud and unconscionability, the fraud claim, the misrepresentation claim, the breach of the duties of loyalty, due care, good faith, and fair dealing claim, the breach of contract claims, the defamation claim insomuch as it relates to the non-corporate Movants, the conversion claim, the UDTPA claim, the tortious interference claim, the civil conspiracy claim, and the punitive damages claim.

Additionally, because this Court found that the claims against the Albright Group are

only proper as counterclaims, rather than third-party claims, the Defendants are to file an Amended Answer and Counterclaim Complaint asserting its claims against both Plaintiff and the Albright Group as counterclaims. Furthermore, because Defendants have filed an Amended Third-Party Complaint and Counterclaim and Movants have filed the Motion to Dismiss discussed above, the Movants' Original Motion to Dismiss is denied as moot.

IT IS THEREFORE ORDERED that the Movants' Motion to Dismiss the Amended Counterclaim and Third-Party Complaint [Doc. #219] is hereby GRANTED IN PART AND DENIED IN PART as described above. IT IS FURTHER ORDERED the Defendants file an Amended Answer and Counterclaim Complaint asserting its claims against both Plaintiff and the Albright Group as counterclaims. IT IS ADDITIONALLY ORDERED the Movants' Original Motion to Dismiss [Doc. #213] is hereby DENIED AS MOOT.

This the 19th day of June, 2015.

United States District Judge

27